Benjamin J. Sweet  (PA Bar No. 87338)
ben@nshmlaw.com
**NYE, STIRLING, HALE & MILLER, LLP**
1145 Bower Hill Road, Suite 104
Pittsburgh, PA 15243
Phone: (412) 742-0631

Jonathan D. Miller (CA Bar No. 220848)
Alison Bernal (CA Bar No. 264629)
jonathan@nshmlaw.com
alison@nshmlaw.com
**NYE, STIRLING, HALE & MILLER, LLP**
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
Phone: (805) 963-2345
Facsimile: (805) 284-9590

*Attorneys for Plaintiff Barbara Zablotney*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA ZABLOTNEY, | Case No. | 22-32J |
| Plaintiff, | COMPLAINT | |
| V. | | |
| WINDBER HOSPITAL, INC. a Pennsylvania nonprofit corporation; and DOES 1-10, | | |
| Defendants. | | |

BARBARA ZABLOTNEY, by and through her attorneys, NYE, STIRLING, HALE & MILLER, LLP, as and for her Complaint in this matter against Defendants WINDBER HOSPITAL, INC., and DOES 1-10, states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff BARBARA ZABLOTNEY, who is a Pennsylvania resident living with a disability, brings this action under Title II and III of the American with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act ("Section 504"), and Section 1557 of the Affordable Care Act ("ACA") to remedy Defendant WINDBER HOSPITAL, INC.'s failure to provide her with accessible access to necessary health care.

2. Plaintiff has a spinal cord injury. When she was 21 years old, Plaintiff was involved in a car accident that left her a paraplegic. Because of her injury, she utilizes a wheelchair for mobility. Plaintiff is thus limited in the major life activity of walking.

3. Defendant Windber Hospital, Inc., and Does 1 through 10 ("Defendant") discriminated against Plaintiff by violating the ADA, Section 504, and the ACA's accessibility guidelines, resulting in significant access barriers at Defendant's facilities. Specifically, Plaintiff experienced difficulty and risk of harm navigating the parking lot, the entrance to the building, and the patient rooms, including inaccessible exam tables, patient beds, a lack of transfer equipment, and inaccessible scales, at Windber Hospital, making it difficult, if not impossible, for Plaintiff to access needed medical care with Defendant. These violations unfortunately exist due to Defendant's systemic failure to maintain accessibility features at its hospital as outlined below.

4. Plaintiff brings this action individually to compel Defendant to cease unlawful discriminatory practices and update its policies and procedures to bring it in compliance with the

law. This will ensure Plaintiff is able to access her health care and obtain full and equal enjoyment and a meaningful opportunity to participate in, and benefit from, Defendant's services. Plaintiff seeks declaratory, injunctive, compensatory, and equitable relief and attorneys' fees and costs to redress Defendant's unlawful discrimination on the basis of disability in violation of Title III of the ADA, 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, and Section 1557 of the ACA.

5. Plaintiff visited Defendant's facilities in Windber, Pennsylvania, and was denied full and equal access as a result of Defendant's deliberate indifference to the accommodation requests made by persons with disabilities. Defendant denied Plaintiff equal access to its facilities because its facilities did not provide appropriate wheelchair access as required by the ADA, the Rehabilitation Act, and the ACA.

6. By failing to make its medical center accessible to mobility impaired persons, Defendant, a public accommodation subject to Title III of the ADA, deprives disabled persons the full benefits of Defendant's health care services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III of the ADA is meant to redress.

7. Defendant has demonstrated through its interactions with Plaintiff that it has adopted a policy and/or pattern and practice of refusing to provide accessible health care to the disabled, and that its policy, on information and belief, is based purely on financial considerations, that resulted in the violation of Plaintiff's civil rights. It is further alleged, on information and belief, that Defendant's policies are not in compliance with the law and specifically failed, at all times relevant to the claims at issue, to require that primary

consideration be given to Plaintiff's request for accommodation or that the reasons why primary consideration could not be provided be documented in writing.

8. Defendant has further demonstrated through its interactions with Plaintiff that Defendant's employees are not properly trained regarding providing appropriate accommodations under the civil rights laws stated herein, including, but not limited to, providing primary consideration to requests for accommodations or documenting the reasons why those requests cannot be accommodated.

9. Defendant's discrimination sends a message that it is acceptable for medical providers to adopt policies, procedures, and practices that deprive mobility-impaired individuals of the opportunity to be full partners in the receipt of health care services.

10. The ADA expressly contemplates retroactive and prospective injunctive relief aimed at modification of a policy or practice that Plaintiff seeks in this action. In relevant part, the ADA states:

> Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods…
> 42 U.S.C. § 12188(a)(2).

11. Consistent with 42 U.S.C. § 12188(a)(2), and as more fully outlined in Plaintiff's prayer for relief, Plaintiff seeks a permanent injunction that provides both retroactive and prospective relief and requires:

   a. Defendant take all steps necessary to bring policies regarding accessibility to the disabled into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that disabled persons have access to health care;

   b. Defendant change its policies and practices so that the accessibility barriers at Defendant's facilities do not reoccur;

      c.      Defendant continue to provide its employees adequate training on its policies to avoid recurrence; and

      d.      Plaintiff's representatives monitor Defendant's facilities for a reasonable period of time in the future as proscribed by this Court to ensure the injunctive relief ordered pursuant to Paragraph 11.a., 11.b., and 11.c. has been implemented and will remain in place.

## **PARTIES**

12.     Plaintiff Barbara Zablotney is, and at all times relevant hereto was, a resident of Windber, Pennsylvania. Plaintiff suffered a spinal cord injury which caused paraplegia. Plaintiff uses a wheelchair for mobility.

13.     Plaintiff is a Medicare recipient, and her treatment at Defendant's facilities was, at least partially, paid for through Medicare.

14.     Defendant Windber Hospital, Inc. is a not-for-profit Pennsylvania corporation, doing business in Pennsylvania. Defendant receives funding through Medicare.

15.     Plaintiff has treated at Windber Hospital, located in Windber, Pennsylvania, for both emergency medical care and a scheduled procedure.

16.     Defendant's facilities are places of public accommodation as defined in 42 U.S.C. §12181(7)(F) and Defendant is subject to the requirements of the ADA, the Rehabilitation Act, and the ACA.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as Does 1 through 10, are unknown to Plaintiff at this time. Plaintiff will amend this Complaint to allege their true names and capacities when known.

Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named Defendants is responsible in some manner for the occurrences alleged in this Complaint.

18. Plaintiff alleges that Defendants, including Doe Defendants, and each of them at all times mentioned in this Complaint, were the alter egos, agents, employees and/or employers of their Co-Defendants and in doing the things alleged in this Complaint were acting within the course of such agency and/or employment and with the permission and consent of their Co-Defendants.

## FACTUAL BACKGROUND

**Plaintiff Has Been Denied Full and Equal Access to Defendant's Facilities**

19. Defendant's hospital, located at 600 Somerset Avenue, Windber, Pennsylvania, 15963, is the closest hospital to Plaintiff's residence, and Plaintiff has presented at the facility for emergency and non-emergency medical treatment.

20. On December 23, 2020, Plaintiff went to the emergency room at Windber Hospital when her doctor recommended she do so after testing positive for COVID-19.

21. More recently, Plaintiff visited the hospital on February 4, 2021, February 8, 2021, and February 9, 2021, for exams, testing, and evaluations due to complications from COVID-19.

22. Plaintiff utilizes a wheelchair for mobility. During her treatment at Defendant's hospital in December 2020 and February 2021, Plaintiff encountered numerous accessibility barriers that made it difficult, if not impossible, to access her medical care. Those barriers include, but are not limited to:

    a. When Plaintiff presented for a CT scan with contrast in February 2021, she requested, but was not provided, accessible transfer equipment at the time of the scan.

For example, during a past visit in which she required an X-ray, the hospital staff not only declined her request, but told Plaintiff they did not know what a transfer board was. Further, at no point during any of her treatment has the hospital provided an operable Hoyer lift to assist with ingress and egress from her wheelchair to a bed. During her visit in December, as a result of the hospital providing no accessible equipment, Plaintiff was forced to remain in her wheelchair for the entire visit.

  b.  There were no staff employees or other methods of operable mechanical lifts to assist with transferring Plaintiff from her wheelchair to an examination bed so she could receive further medical treatment. As stated above, the hospital staff was completely untrained regarding accessible equipment and how to transfer someone between a wheelchair and a bed. Thus, Plaintiff either received all medical treatment in her chair, or on another occasion, had to ask her brother to lift her from the chair to her bed, and complete all subsequent transfers.

  c.  Plaintiff suffered difficulty when attempting to enter the hospital building. Upon information and belief, the entrance to the hospital moved four to five years ago. Prior to this time, the entry was in a parking lot that was fully accessible. However, when the hospital moved the location of the main entrance, the new entrance did not have, and continues to not have, an accessible ramp. Plaintiff notified the front desk staff that a wheelchair user could not get up the ramp independently because of the incline. The front desk staff told Plaintiff there was supposed to be someone at the front entrance to help push a wheelchair user up the ramp. However, there has never been anyone to help Plaintiff upon her arrival at the hospital. Plaintiff is young and has good upper body strength, but even she cannot get up the ramp without assistance, rolling backwards down

the ramp. Now when she goes to the hospital, she has to bring her brother with her in order to even access the building.

        d.       Plaintiff also had difficulty navigating the parking lot due to the inaccessible parking spaces and access aisles. The purportedly accessible parking spaces and access aisles have multiple slope violations as well as missing access aisles and signage in violation of the ADAAG 2010 Standards. *See*, 36 C.F.R. part 1191, § 502.4. The 2010 Standards continued the 1991 Standards without change. See, Appendix D to 28 C.F.R. Part 36, § 4.6.3.

        e.       Plaintiff has never been provided with an accessible scale to record her weight.

        f.       As detailed above, during her visit Plaintiff was subjected to outrageous treatment and made to feel like a second-class citizen due to her disability.

23.      As a result of Defendant's failure to ensure effective accommodations for Plaintiff, she received services that were objectively substandard, inaccessible, and inferior to those provided to ambulatory patients, and was subjected to discriminatory treatment because of her disability. This is especially frustrating to Plaintiff because Defendant's hospital has been updated recently, and Defendant had the opportunity to ensure its rooms and equipment were accessible and its staff properly trained, yet it failed to do so.

24.      Despite this difficulty, frustration, and unequal treatment, Plaintiff will seek Defendant's health care services in the future, because of the proximity of Defendant's facilities to her home and her insurance coverage. Specifically, Plaintiff will have to return to Defendant's facilities and anticipates being required to do so in order to have additional medical care, but is deterred from doing so due to the discrimination she has faced and expects to face in the future.

Furthermore, Plaintiff intends to return to Defendant's facilities to ascertain whether those facilities remain in violation of accessibility standards.

## JURISDICTION AND VENUE

25. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26. This Court has personal jurisdiction over Defendant because Defendant maintains its headquarters in Pennsylvania, has sufficient minimum contacts with Pennsylvania, or has otherwise purposely availed itself of the markets in Pennsylvania through the promotion, marketing, and sale of its products and services in Pennsylvania to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Specifically, Defendant is registered to do business in Pennsylvania and has been doing business in Pennsylvania.

27. Venue is proper under 28 U.S.C. § 1391(a) and (b)(2) because Defendant is subject to personal jurisdiction in this District. Defendant does substantial business in this District, maintains a hospital in this District, and a substantial part of the events or omissions giving rise to these claims occurred in this District. Defendant engaged in the extensive promotion, marketing, distribution, and sales of the services at issue in this District.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE ADA, TITLE III

### [42 U.S.C. §§ 12101 et seq.]

28. Plaintiff restates each and every allegation set forth in the foregoing paragraphs of this Complaint with the same force and effect as if more fully set forth herein.

29. At all times relevant to this action, Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181, et seq. was in full force and effect and applied to Defendant's conduct.

30. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, were in full force and effect and applied to the Defendant's conduct.

31. At all times relevant to this action, Plaintiff has been substantially limited in the major life activity of walking. Accordingly, she is considered an individual with a disability as defined under the ADA, 42 U.S.C. §§ 12102(1), (2); 28 C.F.R. § 36.105(d)(2)(iii).

32. Defendant owns, leases, and/or operates a comprehensive system of healthcare facilities, including numerous specialty services, that are places of public accommodation as defined under Title III of the ADA, 42 U.S.C. § 12181(7)(F).

33. Title III of the ADA prohibits discrimination on the basis of disability "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations." 42 U.S.C. § 12182(a), and the Title III implementing regulation at 28 C.F.R. Part 36.

34. Pursuant to Title III of the ADA and its implementing regulations, a public accommodation cannot deny participation or offer unequal or separate benefits to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A); 28 C.F.R. §§ 36.202(b).

35. Pursuant to Title III of the ADA and its implementing regulations it "shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the

known disability of an individual with whom the individual or entity is known to have a relationship or association." 42 U.S.C. § 12182(b)(1)(E).

36. Defendant discriminated against Plaintiff on the basis of her disability by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages, and/or accommodations of its places of public accommodation, and equal opportunity to participate in and benefit from Defendant's health care services, in violation of the ADA.

37. As set out above, absent injunctive relief there is a clear risk that Defendant's actions will recur with Plaintiff and/or other mobility-impaired persons seeking Defendant's health care services.

38. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1) and/or common law.

## SECOND CAUSE OF ACTION

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

39. Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

40. Plaintiff is an individual with a disability protected by Section 504 of the Rehabilitation Act and qualified to receive health services through Medicare. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

41. Defendant is a recipient of federal financial assistance from the Department of Health and Human Services and is subject to Section 504 of the Rehabilitation Act and its implementing regulations. See 29 U.S.C. § 794; 45 C.F.R. § 84.3(h).

42. Section 504 of the Rehabilitation Act provides that no qualified individual with a disability shall be subjected to disability-based discrimination under any program or activity receiving federal financial assistance. 29 U.S.C. § 794(a).

43. Discrimination includes failing to "[a]fford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," or providing qualified handicapped persons with "an aid, benefit, or service that is not as effective as that provided to others." 45 C.F.R. § 84.4(b)(1)(ii)-(iii); see 45 C.F.R. § 84.52(a)(2)-(3).

44. Section 504 requires health programs or activities that receive federal financial assistance and that have at least fifteen employees to provide auxiliary aids and services to individuals who are mobility-disabled and use wheelchairs. 45 C.F.R. § 84.52(b), (d).

45. A recipient may not directly or through contractual, licensing, or other arrangements, discriminate on the basis of disability. 45 C.F.R. § 84.4(b)(1).

46. Defendant's provision of health care constitutes a program or activity receiving federal financial assistance and, as a recipient, it is required to ensure that both Defendant and its contractors comply with Section 504 of the Rehabilitation Act.

47. Defendant has failed and is failing to meet its obligation to provide mobility-impaired individuals an equal opportunity to use and benefit from its health care programs and activities. In failing to provide wheelchair patients like Plaintiff with accessibility, Defendant has refused to provide the auxiliary aids and services necessary to provide such patients medical treatment in an equally effective and timely manner that protects their privacy and independence.

48. Examples of Defendant's inaccessible accommodations are listed in paragraph 22 above.

49. Because Plaintiff and other mobility-impaired individuals cannot independently access the medical facility, they must either find and rely on third party assistance, which intrudes upon the privacy of their medical and financial information, or forego accessing their critical health care altogether. Defendant's failure to accommodate mobility-impaired patients in an equally effective manner puts their health at risk. This is especially pronounced in the failure to provide accessible transfer equipment to help Plaintiff safely transfer to a hospital bed.

50. As a result of Defendant's actions and omissions, Plaintiff and other mobility-impaired individuals have suffered and will continue to suffer irreparable harm: they have suffered and will continue to suffer from discrimination and unequal access to Defendant's health care services. If there is no change in the status quo, Plaintiff and other mobility-impaired individuals will be denied their right to access and engage fully in the provision of their health care.

51. Defendant's failure to meet its obligations to accommodate mobility-impaired patients in an effective manner constitutes an ongoing and continuous violation of the ADA and the Rehabilitation Act, and their implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and the Rehabilitation Act. Unless enjoined, Defendant's conduct will continue to inflict injuries for which Plaintiff has no adequate remedy at law.

52. Defendant's refusal to accommodate mobility-impaired patients in an equally effective manner, through the provision of alternative formats, was done intentionally or with deliberate indifference to the protected rights of Plaintiff and other mobility-impaired individuals.

53. Plaintiff is entitled to injunctive relief, as well as reasonable attorneys' fees and costs. Plaintiff is also entitled to compensatory damages.

## THIRD CAUSE OF ACTION

## VIOLATION OF SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT

**[42 U.S.C. § 18116]**

54. Plaintiff incorporates the allegations in the preceding paragraphs, as if alleged herein.

55. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.*, Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, and affirmed as of June 12, 2020, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services (the "Department").

56. Defendant participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. As a result, Defendant is a covered entity under Section 1557.

57. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. §§ 92.2(a); 92.103; and 92.105.

58. Where the regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. As applied to Section 1557 covered entities, the Title II regulations require them to "make reasonable modifications to its policies, practices, or procedures when such modifications are necessary to avoid discrimination on the basis of disability . . . For the purposes of this section, the term "reasonable modifications" shall be interpreted in a manner consistent with the term as set forth in the regulation promulgated under Title II of the Americans with Disabilities Act, at 28 CFR 35.130(b)(7)." *See* 45 C.F.R. § 92.105.

59. Defendant had a duty under Section 1557 to accommodate Plaintiff's disability by providing accessibility to health care, including reasonable modifications to policies, practices, or procedures that would allow Plaintiff effective, independent access to her health care treatment.

60. Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that it provided appropriate accommodations so that its treatment of Plaintiff was as effective as its treatment of others in its health care services.

61. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by this part." *See* 45 C.F.R. § 92.5.

62. Defendant's conduct constitutes ongoing and continued violations of Section 1557.

63. Unless restrained from doing so, Defendant will continue to violate Section 1557. This conduct, unless enjoined, will inflict injuries on Plaintiff.

64. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

65. As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and she suffered great mental anguish; and she will continue so to suffer for a long time in the future; and Plaintiff was otherwise injured and damaged.

66. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief:

A. Accepting jurisdiction of this case and declaring Defendant's policies, procedures, and services are discriminatory and violate the ADA, the ACA, and the Rehabilitation Act;

B. Issue a permanent injunction providing both retroactive and prospective relief as follows:

   1. Directing Defendant to evaluate and make reasonable modifications to its policies, practices, and procedures as it relates to persons with disabilities remove all barriers at the Windber Hospital that are readily achievable and technically feasible as required by law, and to take all such steps as are reasonable and necessary in the future to ensure that persons with disabilities are no longer excluded, denied services, segregated, or otherwise treated differently and discriminated against;

2. Requiring Defendant ensure that individuals with disabilities, as defined by applicable law, are afforded equal access to its facilities and services, including, but not limited to, altering the Windber Hospital, to make it accessible to and usable by, individuals with disabilities to the extent required by the Rehabilitation Act, the ADA, and the ACA;

3. Requiring Defendant to train all staff who interact with patients on the requirements of Title III of the ADA, the Rehabilitation Act, and the ACA as they apply to healthcare facilities and on techniques for safely and reasonably accommodating individuals with disabilities to ensure equal access to its facilities and services;

4. Requiring Defendant to incorporate the training referenced in the above paragraph into its new employee orientation for all future Defendant's employees who will have contact with Defendant's patients;

5. Requiring Defendant to notify Plaintiff and her counsel if any individual brings any lawsuit, complaint, charge, or grievance alleging that it failed to provide any aid or service to an individual with a disability at the Windber Hospital. Such notification must be provided in writing within thirty (30) days of the day when either entity has received notice of the allegation and will include, at a minimum, the nature of the allegation and any documentation possessed by Defendant or any of its agents or representatives relevant to the allegation;

6. Requiring Defendant to issue to Plaintiff and her counsel an annual report within twelve (12) months of the date of an injunction demonstrating compliance with the terms of this Court's injunction, and continuing to be provided on an annual basis for a period of five (5) years. The reports should include updated employee policies,

procedures, and training records to establish that Defendant has complied with this Court's injunction;

   7. Allowing Plaintiff, her counsel, and her experts to conduct one site inspection per year for a period of five (5) years of the Windber Hospital at issue upon forty-eight (48) hours written notice by Plaintiff to the facility;

E. Awarding reasonable attorneys' fees, expert fees, costs, and expenses to Plaintiff;

F. Awarding compensatory damages for the intentional discrimination, humiliation, distress, and anxiety suffered by Plaintiff, pursuant to Section 504 of the Rehabilitation Act, and Section 1557 of the ACA.

G. Awarding such other and further relief as the Court deems necessary, just, and proper; and,

H. Retaining jurisdiction of this case until Defendant has fully complied with the orders of this Court.

Dated: March 3, 2022         Respectfully Submitted,

                   */s/ Benjamin J. Sweet*
                   Benjamin J. Sweet
                   ben@nshmlaw.com
                   **NYE, STIRLING, HALE & MILLER, LLP**
                   1145 Bower Hill Road, Suite 104,
                   Pittsburgh, PA 15243
                   Phone: (412) 742-0631

                   Jonathan D. Miller
                   Alison Bernal (*Pro Hac Vice* Forthcoming)
                   jonathan@nshmlaw.com
                   alison@nshmlaw.com
                   **NYE, STIRLING, HALE & MILLER, LLP**
                   33 W. Mission Street, Suite 201
                   Santa Barbara, CA 93101
                   Phone: (805) 963-2345

                   *Attorneys for Plaintiff Barbara Zablotney*