# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA ZABLOTNEY,                 )<br><br>      Plaintiff,           )<br><br>     v.                 )<br><br>WINDBER HOSPITAL, INC.,   )<br><br>      Defendant.      ) | Civil No. 3:22-cv-0032-SLH<br>Judge Stephanie L. Haines |

## OPINION

Plaintiff Barbara Zablotney ("Zablotney") commenced this action on March 3, 2022, filing a Complaint, ECF No. 1, against Defendant Windber Hospital, Inc. ("Windber Hospital") that was ultimately amended on July 6, 2022. ECF No. 19. Zablotney, an individual suffering from a disability, alleged that Windber Hospital violated Title III of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and Section 1557 of the Patient Protection and Affordable Care Act ("ACA") by failing to provide her with adequate equipment, reasonable accommodation, and full and equal access to Windber Hospital's services. ECF No. 19, ¶ 3; ECF No. 39-15, ¶ B. Zablotney sought (1) remediation of Windber Hospital's practices, policies, and procedures; (2) declaratory, injunctive, compensatory, and equitable relief; and (3) attorney's fees and costs. ECF No. 19 ¶ 4. At a settlement conference on July 11, 2023, the parties reached an agreement in principle as to injunctive relief and agreed to file a fee petition with the Court to resolve the issue of Zablotney's attorneys' fees. ECF No. 31. This resolution was memorialized by the parties in a settlement agreement and made effective September 27, 2023. *See* ECF No. 36; ECF No. 39-15.

Pending before the Court is Zablotney's Motion for Attorneys' Fees and Costs, ECF No. 37, and Brief in Support wherein Zablotney requested $333,490.00 in attorney's fees and $37,809.57 in costs, totaling $371,299.57.  ECF No. 38; ECF No. 39-14, p. 2; ECF No. 42-1, p. 2. On November 13, 2023, Windber Hospital filed a Brief in Opposition to Zablotney's Motion for Attorneys' Fees and Costs, ECF No. 40, and on November 21, 2023, Zablotney filed a Reply in Support of the Motion for Attorneys' Fees.  ECF No. 41.  This matter is fully briefed and ripe for disposition.

After careful consideration of the record, the Court will GRANT IN PART and DENY IN PART Zablotney's Motion for Attorneys' Fees and Costs (ECF No. 37). For the reasons set forth below, the Court: (1) GRANTS Zablotney's Counsel a total award of $151,030.43, including $120,450.10 in reasonable attorneys' fees and $30,580.33 in reasonable costs and expenses; (2) GRANTS Zablotney's motion for sanctions under Federal Rule of Civil Procedure 26(g) and includes the sanctions imposed in the awarded lodestar amount; (3) DENIES the award of future monitoring costs; and (4) DENIES Zablotney's motion for sanctions under Federal Rules of Civil Procedure 37(c)(1) and 37(c)(2). Likewise, the Court DENIES Windber Hospital's motion for sanctions under Federal Rule of Civil Procedure 11 (ECF No. 40, pp. 2, 21, 22).

## I.    Legal Standard

Because parties are typically responsible for their own attorneys' fees, there is a "general practice of not awarding fees to a prevailing party absent explicit statutory authorization." *Truesdell v. Philadelphia Housing Authority*, 290 F.3d 159, 163 (3d Cir. 2002) (quoting *Key Tronic Corp. v. U.S.*, 511 U.S. 809, 819 (1994)).  However, Congress has "unambiguously authorized the award of attorneys' fees to a prevailing party in any action commenced under certain statutes including the ADA and the Rehabilitation Act." *Ward v. Philadelphia Parking Authority*,

634 Fed.Appx. 901, 903 (3d Cir. 2015) (citing 42 U.S.C. § 12205; 29 U.S.C. § 794a(b)). Before a party may be awarded attorneys' fees it must be "a prevailing party" in that it must have succeeded on a significant issue in litigation which achieves some of the benefit the party sought in bringing suit. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The prevailing party bears the burden to demonstrate that "the fee request is fair by submitting documentation of the hours worked and the rates charged, along with evidence demonstrating both are reasonable." *Newton v. Pennsylvania State Police*, No.18-1639, 2022 WL 874305 at *2 (W.D. Pa. Mar. 24, 2022) (citing *Loughner v. University of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *M.M. v. School District of Philadelphia*, 142 F.Supp.3d 396, 404 (E.D. Pa 2015)). When this burden is carried by the prevailing party and the opposing party contests the fee request, "the district court has discretion in determining the amount of a fee award" based upon the record evidence. *Hensley*, 461 U.S. at 437.

## II.    Analysis

In its Brief in Opposition, Windber Hospital raises the following five challenges to Zablotney's fee petition: (1) Zablotney did not meet her burden of proof that she was the "prevailing party"; (2) the proposed rates are neither reasonable in the Western District of Pennsylvania nor supported by record evidence; (3) the proposed hours are excessive, redundant, or otherwise unnecessary in addition to lacking sufficient specificity for the Court's consideration; (4) because, in terms of monetary cost, the modifications to Windber Hospital's facilities set forth in the settlement agreement constitute only 14% of the modifications sought by Zablotney, the attorney's fees awarded should be reduced by 86%; and, (5) no support was offered for current costs or for the future costs of monitoring. ECF No. 40. In addition, Windber Hospital contends that Zablotney's fee petition is "outrageous," "specious," "submitted for an improper purpose,"

3

and "not warranted by existing law," ECF No. 40, pp. 2, 21, 22, entitling it to an award of costs associated with responding to Zablotney's fee petition as a sanction under Rule 11 of the Federal Rules of Civil Procedure. Conversely, Zablotney raises the issue of sanctions under Federal Rules of Civil Procedure 26 and 37. The Court will address each issue in turn.

### A. Prevailing Party

Windber Hospital contends that because: (1) the Court did not issue a "Consent Decree or Order compelling [it] to do anything"; (2) "the privately negotiated agreement was signed only by the parties and contained no judicial intervention or enforcement"; and, (3) "the Settlement Agreement contained no admission or agreement as to who was the 'prevailing party' or the 'results obtained' by either party," Zablotney cannot be entitled to attorney's fees as the prevailing party. ECF No. 40, p. 9. For the reasons set forth below, these contentions are not supported by existing caselaw, and the Court accordingly rejects Windber Hospital's arguments.

The Court of Appeals for the Third Circuit has "observed generally that the Supreme Court has given a generous formulation to the term 'prevailing party.'" *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 292 (3d Cir. 2016) (quoting *Truesdell*, 290 F.3d at 163). In determining whether prevailing party status should be conferred upon a party for purposes of fee-shifting statutes, the Supreme Court in *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health & Human Resources* set forth two threshold inquiries: (1) whether there is a "material alteration of the legal relationship of the parties"; and (2) whether that material alteration is "judicially sanctioned." 532 U.S. 598, 604-05 (2001).

### 1. Was there a Material Alteration of the Legal Relationship Between the Parties?

A material alteration of the legal relationship of the parties occurs and the plaintiff may be considered the prevailing party when she receives some relief on the merits of her claim, regardless

of whether that relief is nominal or extravagant. *See Raab*, 833 F.3d at 293 (quoting *Hewitt v. Helms*, 482 U.S. 755, 760 (1987); *Farrar v. Hobby*, 506 U.S. 103, 114 (1992); *Buckhannon*, 532 U.S. at 604). "The fact that a plaintiff prevailed [and obtained relief] through settlement rather than through litigation does not weaken her claim to fees." *Id.* (quoting *Maher v. Gagne*, 448 U.S. 122, 129 (1980)).

Here, in its own estimation, Windber Hospital concedes that Zablotney succeeded on 14% of her claims. ECF No. 40, p. 21. In this way, Windber Hospital has conceded that Zablotney has received *some* relief on the merits of her claim, nominal or otherwise. Even accepting, arguendo, Windber Hospital's low estimation of Zablotney's success, the relief Zablotney obtained through success on her claims, memorialized in the settlement agreement, altered the legal relationship between the parties. *See Raab*, 833 F.3d at 293 (holding that the payment of $150,000 from defendant to plaintiff pursuant to a private settlement agreement constituted a material alteration of the parties' legal relationship). Therefore, the Court is satisfied that the first *Buckhannon* inquiry indicates that prevailing party status may be conferred upon Zablotney.

### 2. Was that Material Alteration Judicially Sanctioned?

In order for prevailing party status to be conferred upon a party, the material alteration of the legal relationship between the parties must be marked by judicial imprimatur. *See Buckhannon*, 532 U.S. at 605; *CRST Van Expedited v. E.E.O.C.*, 578 U.S. 419, 422 (2016). "[T]he Court in *Buckhannon* offered two examples meeting this standard: enforceable judgments on the merits and settlement agreements enforced through a consent decree." *Raab*, 833 F.3d at 293 (quoting *Buckhannon*, 532 U.S. at 604-05) (internal quotation marks omitted). However, these examples "are not meant to be exhaustive." *See Yeh v. United States Bureau of Prisons*, No. 3:18-cv-943, 2020 WL 1505661, at *4 (M.D. Pa. Mar. 30, 2020).

While a defendant's voluntary change in conduct typically lacks the requisite judicial sanction of the material alteration of the legal relationship between the parties, *Buckhannon*, 532 U.S. at 605, "a settling plaintiff *may* be entitled to attorney's fees if the district court has . . . jurisdiction to enforce the terms of the settlement agreement." *Raab*, 833 F.3d at 294 (emphasis added). In a case that has been dismissed, a federal district court generally does not have jurisdiction to enforce a settlement agreement, but it will have ancillary jurisdiction over a settlement agreement when "the terms of the settlement agreement . . . [are] made part of the order of dismissal—either by separate provisions (such as a provision retaining jurisdiction over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Raab*, 833 F.3d at 294 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380-81 (1994)) (internal quotation marks omitted); *see also Buckhannon*, 532 U.S. at n.7. Such judicial imprimatur of a settlement agreement in a district court's dismissal order permits it to retain ancillary jurisdiction over the settlement agreement's enforcement though the case has been dismissed as a whole. Thus, judicial imprimatur and jurisdiction are very closely related when assessing the court's ability to enforce a private settlement agreement.

Here, the Court issued an Order administratively closing this case the day following the parties' settlement conference and, therein, specifically enumerated its retained jurisdiction over both the "issue of attorneys' fees and any other issues relating to the completion and enforcement of settlement." ECF No. 32. Windber Hospital contends that the Court Order, ECF No. 32, lacks the requisite judicial imprimatur as the Court administratively closed the case and directed the parties to file dismissal upon final resolution of the matter. ECF No. 40, p. 11. This argument is unavailing.

Judicial imprimatur of a private settlement agreement is necessary for the court to retain ancillary jurisdiction when issuing a dismissal order because dismissal naturally alters the court's jurisdiction, but "administrative closings have no effect on the district court's jurisdiction." *Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 247 (3d Cir. 2013). For this reason, when a case is administratively closed, though not dismissed, a district court retains jurisdiction and therefore has the authority to issue a fee order in response to a fee application. *See I.K. on behalf of Z.S. v. Montclair Bd. of Ed.*, 820 Fed.Appx. 152, 153 (3d Cir. 2020) (holding that the court retained jurisdiction over the plaintiff's claims and could issue a fee order despite the case being administratively closed). Because this case has been administratively closed rather than dismissed, the Court retains jurisdiction over the entire case and may issue a fee order in response to Zablotney's fee application which necessitates identifying a prevailing party. *See id.* Ancillary jurisdiction need not be established. Still, upon this case's eventual dismissal, the Court will retain ancillary jurisdiction over the private settlement agreement as a result of its Order of July 12, 2023, ECF No. 32, which provided the requisite judicial imprimatur by explicitly retaining jurisdiction over the settlement agreement's completion and enforcement. *See Raab*, 833 F.3d at 294 (quoting *Kokkonen*, 511 U.S. at 380-81); *see also Buckhannon*, 532 U.S. at n.7.

Thus, because the case has not yet been dismissed, this Court maintains jurisdiction over the case, including the settlement agreement, and it will retain ancillary jurisdiction upon the case's later dismissal as a result of its July 12th Order which judicially sanctioned the settlement agreement.[1] ECF No. 32; *see Raab*, 833 F.3d at 294 (quoting *Kokkonen*, 511 U.S. at 380-81). In

---

[1] Windber Hospital argues that, in accordance with its reading of the Court's July 12th Order, ECF No. 32, it *intends* to sign a joint stipulation of dismissal under Federal Rule of Civil Procedure 41(a)(1)(ii). ECF No. 40, p. 11. Because of that intention, Windber Hospital argues that the Court's ability to judicially sanction the settlement agreement in a later Court ordered dismissal is non-existent. *Id.* Windber Hospital argues that this, in effect, renders the Court unable to identify Plaintiff as a prevailing party due to jurisdictional issues. *Id.* Zablotney counters that the parties "agreed to stipulate to a dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2)." ECF No. 41 p. 4. This would allow the Court to judicially sanction the settlement agreement in the dismissal and would, therefore, permit prevailing party

judicially sanctioning the settlement agreement in the July 12th Order, ECF No. 32, the Court granted judicial imprimatur to the material alteration of the legal relationship between the parties and thus may confer prevailing party status upon Zablotney for purposes of the fee order. Therefore, the Court recognizes Zablotney as the prevailing party and will examine the requested fees and costs.

### B. Lodestar Method

The lodestar method, pioneered by the Third Circuit, has "achieved dominance in the federal courts" and has become "the guiding light of [federal] fee shifting-jurisprudence." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 542, 551 (2010); *see generally S.S. Body Armor I., Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 773 (3d Cir. 2019). A lodestar award is calculated by multiplying the number of hours counsel reasonably worked on his or her client's case by a reasonable hourly billing rate given the attorney's experience, the nature of the services rendered, and the geographical region in which they were provided. *See S.S. Body Armor I., Inc.*, 927 F.3d at 773; *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). The product of this calculation, the lodestar amount, may be increased or decreased by a multiplier in exceptional circumstances at the discretion of the court. *See Perdue*, 559 U.S. at 552-53; *S.S. Body Armor I., Inc.*, 927 F.3d at 773; *Gunter*, 223 F.3d at 195 n.1; *Newton*, 2022 WL 874305 at *3. As both the ADA and the Rehabilitation Act are fee-shifting statutes, *see Ward*, 634 Fed.Appx. at 904, the Court will employ the lodestar method in assessing whether the fee request is reasonable.

---

status to be conferred upon Zablotney currently, with judicial imprimatur to follow. Both parties, however, miss the point that this case has not yet been dismissed and that this Court sanctioned the settlement agreement in its July 12th Order. ECF No. 32; *see Raab*, 833 F.3d at 294. Intention to file a joint stipulation of dismissal is not the equivalent of the case already being dismissed. As administratively closed, this Court retains jurisdiction over the case and therefore may issue a fee order which necessitates the finding of a prevailing party. *See I.K. on behalf of Z.S.*, 820 Fed.Appx. at 153. When this case is actually dismissed, the Court retains ancillary jurisdiction over the enforcement of the settlement agreement in accordance with its July 12th Order, ECF No. 32, and the judicial imprimatur set forth therein.

While a district court has substantial discretion in determining a reasonable rate and reasonable hours, *see generally Newton*, 2022 WL 874305 at *3, it must rely upon the record to set attorney's fees rather than upon a generalized sense of what is customary and proper, or the amount awarded the same attorney by other courts in previous cases. *See Pocono Mountain School District v. T.D.*, No. 22-1787, 2023 WL 2983501 at *4 (3d Cir. Feb. 7, 2023); *Carey v. City of Wilkes-Barre*, 496 Fed.Appx. 234, 236 (3d Cir. 2012). Once the lodestar has been determined, there is a strong presumption that it is reasonable, and thus, the court is only to use a multiplier to increase or decrease the lodestar determination in the "rare and exceptional" circumstance that the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee. *See Perdue*, 559 U.S. at 552-53; *S.S. Body Armor I., Inc.*, 927 F.3d at 773; *Gunter*, 223 F.3d at 195 n.1; *Newton*, 2022 WL 874305 at *3 (quoting *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001)). Such exceptional circumstances include instances where the plaintiff's lawsuit contains "distinctively different claims for relief that are based on different facts and legal theories" and the plaintiff only succeeds on a portion of the claims, justifying a reduction, *Dee v. Borough of Dunmore*, 548 Fed.Appx. 58, 64 (3d Cir. 2013) (quoting *Hensley*, 461 U.S. at 434), or in cases of exceptional success, an increase. *See Hensley*, 461 U.S. at 435

### 1. Reasonableness of Hourly Rates

The party requesting attorney's fees "bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case." *Smith v. Philadelphia Housing Authority*, 107 F.3d 223, 225 (3d Cir. 1997); *see also Carey*, 496 Fed.Appx. at 236. If this burden is met, the defendant may contest the plaintiff's prima facie case with appropriate record evidence, affording the district court a great deal of discretion to adjust the fee awarded in light of those

objections. *See Taylor v. USF-Red Star Exp., Inc.*, 212 Fed.Appx. 101, 111 (3d Cir. 2006); *Newton*, 2022 WL 874305 at *3. Should the plaintiff make out a prima facie case and the defendant fail to contest the request with appropriate record evidence, the plaintiff must be awarded fees at the requested rate. *See Dee*, 548 Fed.Appx. at 62; *Smith*, 107 F.3d at 225. However, if "the plaintiff fails to meet [its] prima facie case, the district court has the discretion to determine what award is reasonable." *Carey*, 496 Fed.Appx. at 237 (citing *Loughner v. University of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001)); *see also L.J. ex rel. V.J. Audubon Bd. of Educ.*, 373 Fed.Appx. 294, 297 (3d Cir. 2010) (citing *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 2036 (3d Cir. 1995)); *Loughner*, 260 F.3d at 180.

When the fee applicant seeks to satisfy its initial burden by producing satisfactory evidence that the requested rates are reasonable, the "evidence often comes in the form of affidavits from other attorneys" in addition to the filing attorney's own affidavits. *Carey*, 496 Fed.Appx. at 236 (citing *Evans v. Port Authority of New York and New Jersey*, 273 F.3d 346, 360-61 (3d Cir. 2001)). However, Zablotney filed no affidavits beyond the Declarations of Benjamin J. Sweet, counsel for Zablotney. ECF No. 39. Instead, the hourly rate requested in Zablotney's motion for attorneys' fees is supported exclusively by three pillars: (1) the past success of the law firm representing Zablotney (Nye, Stirling, Hale, Miller, & Sweet, LLP--"NSHMS"), and its individual attorneys, including the amount awarded to its attorneys in other cases; (2) the fee chart established by Community Legal Service, Inc. ("CLS"); and (3) the experience of the billing attorneys and paralegals. ECF No. 38, pp. 14-16 nn.10, 12; ECF No. 41, p. 6.

Although the impressive track record of NSHMS speaks for itself, its past victories in other cases or the award given its attorneys in other districts have no bearing on the reasonable market rate for their services in this case. Even in accounting for the prior appearance of NSHMS

attorneys in cases adjudicated in the Western District, "it is impermissible . . . to simply rely on the hourly rate set by the court for the attorney seeking fees in previous cases in which he has appeared." *Pocono Mountain School District*, 2023 WL 2983501, at *4 (citing *Smith v. Philadelphia Housing Authority*, 107 F.3d at 226). As such, an attorney's prior awards by courts in the same district may prove persuasive though they are not binding. The two cases Zablotney offered as support for the requested fees, *Heinzl v. Cracker Barrel Old Country Store*, No. 14-cv-1455, DKT 172 (W.D. Pa. Aug. 10, 2017) and *Dieter v. Aldi, Inc.*, No. 2:18-cv-00846-JFC (W.D. Pa. Aug. 29, 2019), lack persuasive character because in both cases, the requested fees were uncontested. When requested fees are uncontested, the court does not assess their reasonability but instead must award petitioners fees the requested rate. *See Dee*, 548 Fed.Appx. at 62. Thus, the cases cited by Zablotney neither reflect a judicial determination that the fees requested were in accordance with this market's rates, nor are they, as a result, indicative of a reasonable market rate in this region at this time.

While the CLS fee schedule "has been approvingly cited by the Third Circuit as being well developed and has been found by the Eastern District of Pennsylvania to be a fair reflection of the prevailing market rates in Philadelphia," *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001) (emphasis added), it is not relevant to determining the prevailing market rate in the Western District. *See Borrell v. Bloomsburg University*, 207 F.Supp.3d 454, 509 (M.D. Pa. 2016) (rejecting the application of the CLS fee schedule to a fee application in the Middle District because Philadelphia is not encompassed by the Middle District). Reasonable fees are calculated according to the prevailing market rates in the *relevant* community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also Borrell*, 207 F.Supp.3d at 506. Thus, because the market in the Western District

does not encompass Philadelphia, the CLS fee schedule is not representative of the prevailing market rates for lawyers of comparable skill, experience, or reputation in this community.[2]

Relatedly, the experience of the attorneys petitioning the court for fees guides the Court's assessment of a reasonable hourly rate in so much as the attorneys' experience allows the Court to compare the rates requested to those charged by other attorneys of similar experience and skill in the prevailing market. *See Borrell*, 207 F.Supp.3d at 506 (quoting *Loughner*, 260 F.3d at 180). In this way, the attorneys' experience set forth in Zablotney's Reply, ECF No 41, p. 9, does not, in and of itself, support the requested fees. Rather, the attorneys' experience would have aided the Court in comparing the reasonableness of the requested fees should Zablotney have introduced record evidence in the form of affidavits from similarly experienced and skilled attorneys in the prevailing community. Thus, as Zablotney has included no such record evidence in the form of affidavits or otherwise, the experience of Zablotney's attorneys does not single-handedly support the requested rate as reasonable.

Zablotney has failed to produce sufficient evidence to establish a prima facie case that the requested attorney's fees constitute a reasonable market rate for the legal services rendered. *See Carey*, 496 Fed.Appx. at 236; *Borrell*, 207 F.Supp.3d at 509. The Court must therefore exercise its discretion to determine a reasonable hourly rate. *See Carey*, 496 Fed.Appx. at 237 (citing *Loughner*, 260 F.3d at 180); *L.J. ex rel. V.J. Audubon Bd. of Educ.*, 373 Fed.Appx. 297 (citing *Washington*, 89 F.3d 2036); *Loughner*, 260 F.3d at 180.

---

[2] In their briefing, the parties disputed the relationship of *Turkovich v. Sally Beauty Supply LLC*, No. 2:20-cv-00694-NR, 2021 WL 767629 (W.D. Pa. Feb. 26, 2021) to Zablotney's reliance upon the CLS fee schedule in this case. Though the *Turkovich* court utilized the CLS fee schedule to award attorneys' fees, the court indicated that the CLS fee schedule constituted *at least* a reasonable hourly rate as it likely contemplates rates higher than the typical rate for similarly experienced attorneys in this district. *See id.* at *1. This Court, however, declines to apply the CLS fee schedule as it is not specifically tailored to the market rates of this district.

The Court has reviewed the previous five years of case law in the Western District to catalogue the judicially determined, reasonable hourly rates awarded in ADA, Rehabilitation Act, and ACA cases.  The Court has found that the reasonable hourly rates awarded range from $125.00 per hour for an attorney with one years' experience to $525.00 per hour for an attorney with thirty years' experience.  *Cf Turco v. Zambelli Fireworks Mfg. Co.*, 2022 WL 395245, at *3 (W.D. Pa. Feb. 9, 2022) with *Newton v. Pennsylvania State Police*, No.18-1639, 2022 WL 874305 at *10 (W.D. Pa. Mar. 24, 2022).[3]  This range reflects an hourly increase of approximately $14.29 with each subsequent year of experience.  In awarding the following hourly rates, the Court increased the base rate of $125.00 per hour for an attorney with one years' experience to $150.00 per hour for an attorney with one years' experience to account for any cost of living increase experienced in the two years since *Turco*, 2022 WL 395245, was decided.  Utilizing the base rate of $150.00 per hour, the Court increased the rate awarded by $14.29 for each years' experience after the first and rounded to the nearest dollar.  In doing so, the Court awards the following rates:

| Attorney's Initials: | Years' Experience: | Requested Hourly Rate: | Awarded Hourly Rate: |
|---|---|---|---|
| BJS | 22 | $700 | $450.00 |
| AMD | 14 | $700 | $336.00 |
| JDM | 21 | $700 | $436.00 |
| PYM | 34 | $700 | $622.00 |

---

[3] In between those rates, courts in the Western District have awarded: attorneys with seven years' experience $325.00, *Mortland v. Castle Hospitality, LLC*, No. 21-1351, 2022 WL 3586661, at *9 (Aug. 22, 2022, W.D. Pa.); attorneys with ten years' experience $295.00, *Turco*, 2022 WL 395245, at *3; *Schirnhofer v. Premier Comp Solutions, LLC*, No. 2:16-CV-00462-BRW, 2019 WL 7482299, at *2 (W.D. Pa. Oct. 23, 2019); attorneys with between twelve and thirteen years' experience: $295.00, *Turco*, 2022 WL 395245, at *3, $375.00, *Schirnhofer*, 2019 WL 7482299, at *2, and $400.00, *Turco*, 2022 WL 395245, at *3; attorneys with between fourteen and fifteen years' experience: $350.00, *Pletcher v. Giant Eagle, Inc.*, No. 2:20-cv-754, 2021 WL 6061666, at *4 (W.D. Pa. Nov. 8, 2021), and $375.00, *Newton*, 2022 WL 874305 at *2; attorneys with twenty-one years' experience $375.00, *Schirnhofer*, 2019 WL 7482299, at *2; and attorneys with thirty years of experience $450.00. *Turco*, 2022 WL 395245, at *3.

| RB | 6 | $400 | $221.00 |
| CTA | 3 | $350 | $179.00 |

### 2. Reasonableness of Hour Log

The party requesting attorney's fees has the burden of demonstrating that the request is reasonable, and it may satisfy that burden by "submit[ing] evidence supporting the hours worked and the rates claimed." *Steward v. Sears, Roebuck & Co.*, No. 02-8921, 2008 WL 1899995 at *2 (E.D. Pa April 29, 2008) (quoting *Hensley*, 461 U.S. at 433). "The fee application must be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed" and if certain hours are duplicative. *Gelis v. BMW of North America, LLC*, 49 F.4th 371, 379-80 (3d Cir. 2022) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1190 (3d Cir. 1990)). As such, the petition should "include some fairly definite information as to the hours devoted to various general activities, e.g., pretrial discovery, settlement negotiations, and the hours spent by various classes of attorneys, e.g., senior partners, junior partners, and associates." *Id.* at 380 (quoting *Keenan v. City of Philadelphia*, 983 F.2d 459, 473 (3d Cir. 1992)). However, there is no requirement for "the exact number of minutes spent[,]. . . the precise activity to which each hour was devoted[,] . . . [or] the specific attainments of each attorney" to be included in the filings for the hour log to be sufficiently specific. *Rode*, 892 F.2d at 1190 (quoting *Lindy Bros. Builders, Inc. of Phila. v. American Radiator & Standard Sanitary Corp.*, 487 F.3d 161, 167 (3d Cir. 1973). This is because specificity is only required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed. *See Washington*, 89 F.3d at 1037 (quoting *Rode*, 892 F.2d at 1190).

Windber Hospital alleges that Zablotney's hour log is inadequate in that it is not "reasonably documented" or "sufficiently specific" to allow the "court to determine if the hours claimed are unreasonable for the work performed." ECF No. 40, p. 16. This contention arises in response to the fact that the hour log is an undated, aggregated, computer-generated summary categorized by group rather than individual task. *Id.*, pp. 16-17. Additionally, Windber Hospital alleges that hours expended by Zablotney are "excessive," "redundant," and "otherwise unnecessary." *Id.*, p. 16.

a. **Sufficient Specificity of Hour Log**

While the Third Circuit has found sufficient specificity where the computer-generated time sheet provided the date that the activity took place, *see Keenan*, 983 F.2d at 473 (citing *Rode*, 892 F.2d at 1191), the inclusion of dates is not the lone hallmark of sufficient specificity. In comparing the computer-generated sheet in *Rode* to the computer-generated hour log in this case, it is apparent that Zablotney's hour log provides at least the same, if not greater, specificity, even absent dates, than the filings upheld as sufficiently specific in *Rode*. Zablotney's hour log is divided into seventeen general categories that are broken down into thirty-two more specific subcategories based upon the stage of the proceeding. ECF No. 39-14. Conversely, the *Rode* court upheld a petition with an aggregated monthly report that: (1) was divided into three categories; (2) listed the hours spent on each category; and (3) included only the initials of the billing attorney, the identification of the client, and a single word or phrase description in explanation of the time billed. *See* 892 F.2d at 1191, n. 13.

Specificity is only required to the extent necessary for the district court to determine if the hours claimed are unreasonable for the work performed, and, therefore, the requisite level of specificity may vary, to some extent, in relation to the facts of the case. *See Washington*, 89 F.3d

at 1037.  When a motion for attorney's fees is filed in a class action that has been litigated for three years and has a total of three law firms seeking fees for performing similar categories of work, an undated summary chart may not be sufficient for the court to delineate between the work accomplished by each firm let alone the reasonableness of the hours each individual firm expended.  *See Gelis*, 49 F.4th at 380.  However, in this single plaintiff case, where there is no question what portion of the work the filing law firm has completed, the summary charts provided are sufficient for this Court to determine if the hours claimed are reasonable for the work performed.  Thus, Zablotney's hour log is sufficiently specific for the Court to assess the reasonableness of the hours expended.

### 3.  Reasonableness of Hours Expended

Windber Hospital does not raise specific challenges to the hour log set forth by Zablotney but instead raises the general challenge that the hours expended by Zablotney are "excessive," "redundant," and "otherwise unnecessary."  ECF No. 40, p. 16.  "The hours expended by counsel must be reasonable and the party seeking the fees has the burden to establish reasonableness." *Regional Employers' Assurance Leagues Voluntary Employee's Beneficiary Association Trust v. Castellano*, 164 F.Supp.3d 705, 715 (E.D. Pa. 2016) (citing *Hensley*, 461 U.S. at 432; *Rode*, 892 F.2d at 1183).  When evaluating the reasonableness of the hours expended, the district court is to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." *Loughner*, 260 F.3d at 177 (quoting *Public Int. Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)) (internal quotation marks omitted); *Fritz by Fritz v. White*, 711 F.Supp. 1350, 1357 (E.D. Pa. 1989); *Hensley*, 103 S.Ct. at 432.  "[N]ormally, the higher the allowed hourly rate commanded based upon skill and experience, the shorter the

time it should require an attorney to perform a particular task." *Ward v. Philadelphia Parking Authority*, No. 11-4692, 2015 WL 263733, at *9 (E.D. Pa. Jan. 21, 2015) (quoting *Rainey v. Philadelphia Housing Authority*, 832 F.Supp. 127, 130 (E.D. Pa. 1993)).

"A reduction for duplication is warranted only if the attorneys are unreasonably doing the same work." *Elizabeth S. v. Sch. Dist. of Philadelphia*, No. 11-1570, 2012 WL 2469547, at *3 (E.D. Pa. June 28, 2012) (citing *Rode*, 892 F.2d at 1187; *see also Herkalo v. Nat'l Liberty Corp.*, No. 94–7660, 1997 WL 539754, at *5 (E.D. Pa. Aug. 7, 1997) (internal quotation marks omitted). Courts have found a reduction for duplication necessary where multiple attorneys bill separately for reviewing and editing a brief prepared by a senior attorney or when multiple attorneys bill separately for informal meetings and discussions amongst themselves. *See Shelton v. Restaurant.com Inc.*, No. 10-824, 2016 WL 7394025, at *8 (D. N.J. Dec. 21, 2016). In these circumstances, courts will "disallow the hours billed by attorneys with the lower hourly rate." *Id.*

### 4. Failure to Document Hours Expended by Paralegals

Zablotney fails to provide any documentation as to the number of hours expended by paralegals on this case. While the Court may infer that the difference between the total hours alleged and the hours expended by the attorneys represent those expended by the paralegals assisting on this case, Zablotney has submitted no documentation as to the division of the hours between the two paralegals who assisted. As such, Zablotney's failure to carry its burden of proof leaves the Court unable to determine a lodestar amount for the work done by the two paralegals because no hours are specifically documented for the Court to determine a lodestar amount. Therefore, the Court declines to award fees regarding the hours expended by the paralegals. *See Bush v. LVNV Funding LLC,* No. 22-1292-KSM, 2022 WL 16552923, at *6-7 (E.D. Pa. Oct. 31, 2022) (awarding paralegal fees only after counsel substantiated the requested hourly rates and the

hours expended). Thus, the hours expended will be reduced by 37.2 hours to reflect only those Zablotney documented in the hour log submitted to the Court. *See* ECF No. 39-14. The Court will assess the reasonableness of the documented 596.4 hours expended below.

### 5. Pre-Complaint Investigation

Zablotney requests an award for 99.2 hours expended on Pre-Complaint Investigation. Included in the hour log submitted by Zablotney is a breakdown of the hours devoted to Pre-Complaint Strategy. One subcategory within the Pre-Complaint Category reflects time dedicated to "[a]nalysis, coordination, and discussion with co-counsel relating to case strategy and fact development." ECF No. 39-14, p. 8. Where multiple attorneys bill separately for informal meetings and discussions amongst themselves, a reduction for redundancy is necessary. *See Shelton*, 2016 WL 7394025, at *8. When this occurs, the appropriate method of reduction is to disallow the hours redundantly billed by each attorney except those billed by the individual garnering the highest hourly rate. *See id.* In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for coordinative efforts, here 6.3 hours. ECF No. 39-14. Thus, the Court will reduce the hours expended in the Pre-Complaint Investigation category by 6.3 hours for each attorney, except PYM who is due the highest hourly rate; this reflects a reduction of 25.2 hours. *See Shelton*, 2016 WL 7394025, at *8.

"Time spent before the formal commencement of litigation, on matters such as attorney-client interviews and investigation of the case, is compensable." *H.C. v. Bradshaw*, 426 F.Supp.3d 1266, 1282 (S.D. Fla. 2019). "Generally, compensable activities include the preparation of filing the lawsuit [and] background research. . . among other things." *Watcher v. Pottsville Area*

*Emergency Medical Service, Inc.*, 559 F.Supp.2d 516, 523 (M.D. Pa. 2008) (quoting *DirecTV, Inc.*

*v. Clark,* No. 03–2477(JBS), 2007 WL 2212608, at *4 (D.N.J. July 27, 2007)).  Here, the hours

Zablotney's counsel expended prior to the filing of the Complaint are compensable.  However,

given the "extensive experience [Zablotney's counsel has had] litigating ADA cases," ECF No.

38, p. 20, the Court finds the hours expended excessive, even after the reduction for redundancy.

The Court finds that the knowledge and prior experience of Zablotney's counsel should reduce the

overall number of hours expended on Pre-Complaint Strategy and the Pre-Complaint Research

and Analysis.  In light of this, the Court finds the hours expended in those subcategories to be

excessive, necessitating a reduction of 10 hours per category.  Because "the higher the allowed

hourly rate commanded based upon skill and experience, the shorter the time it should require an

attorney to perform a particular task," *Ward,* 2015 WL 263733, at *9 (quoting *Rainey v.*

*Philadelphia Hous. Auth.*, 832 F.Supp. 127, 130 (E.D. Pa. 1993), the Court will reduce the hours

more experienced attorneys expended at a greater rate than attorneys with less experience.  The

Court finds the remainder of the hours otherwise expended in this category to be reasonable.  The

chart below depicts the reductions made by the Court.

| Attorney's Initials | Requested Hours Spent on Pre-Complaint Investigation: | Awarded Hours for Pre-Complaint Case Strategy: |
|---|---|---|
| BJS | 18.9 | 7.5 |
| AMB | 18.4 | 9.2 |
| JDM | 12.2 | 2.5 |
| PYM | 15.6 | 11.2 |
| RB | 0 | 0 |
| CTA | 34.1 | 23.6 |

| Total Hours: | 99.2 | 54 |
| --- | --- | --- |

### 6. Complaint/First Amended Complaint

Zablotney requests an award for 70 hours expended on the Complaint and Amended Complaint. Under the category of Complaint and Amended Complaint, Zablotney's hour log is broken into three subcategories, "Strategy," "Research and Analysis," and "Drafting and Revising." ECF No. 39-14. Each of these subcategories contains hours devoted to analysis, coordination, and discussion with co-counsel or "[a]nalysis of drafts of briefs and authority identified by co-counsel." ECF No. 39-14, p. 8. In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for coordinative efforts. In doing so, a reduction of 30.1 hours is necessary to eliminate the redundancy of billing in this category. *See Shelton*, 2016 WL 7394025, at *8.

Courts have commonly reduced the hours expended upon researching, drafting, and revising a complaint when counsel is experienced in the pertinent area of litigation. *See Pawlak v. Compusolvepa.com*, No. 15-438, 2015 WL 4246671, at *3 (E.D. Pa. July 14, 2015) (reducing hours spent on researching, drafting, and revising a three-count complaint to 4 hours based upon counsel's reputation as one of the best in the field); *Schofield v. Trustees of University of Pennsylvania*, 919 F.Supp. 821, 828 (E.D. Pa. 1996) (halving the hours an attorney with three years' experience spent researching and drafting a complaint based upon both her experience and the fact that the case "presented no novel issue of law."); *Fritz by Fritz*, 711 F.Supp. at 1357 (reducing the 18 hours expended for researching and drafting the complaint due to counsel's experience in litigating similar matters). A reduction has also been deemed appropriate when the

legal issues involved were previously asserted in other courts or the filed complaint bears great resemblance to that which was filed in a prior action. *Bush,* 2022 WL 16552923, at *5 (cataloging cases to note that anywhere between 2.1 hours and 5 hours has been deemed a reasonable amount of time to review and revise a form complaint to describe the facts and exhibits specific to the case in which it is being filed); *Shelton,* 2016 WL 7394025, at *9 (reducing the number of hours expended when counsel is experienced in the area of litigation, the legal issues involved had been previously asserted in similar proceedings in other courts, and the complaint was drafted by a partner, principal of a law firm, and a senior attorney); *Ward*, 2015 WL 263733 at *9 (awarding 6.78 hours for drafting a complaint that was remarkably similar to that which was filed in an earlier case); *Trucksess v. Thompson Automotive Group, Inc.*, No. 10-4313, 2011 WL 6415047, at *4 (E.D. Pa. Dec. 14, 2011) (noting that six hours is a reasonable amount of time for an experienced attorney to spend drafting and communicating with a client regarding a two count complaint that largely repeated allegations made in a related case and contained mostly boilerplate allegations). Additionally, reductions relative to hours expended on an amended complaint are appropriate when the difference between the original complaint and amended complaint are negligible. *See Machado v. Law Offices of Jeffery H. Ward*, No. 14-7401 (MAS) (TJB), 2017 WL 2838458, at *4 (D.N.J. June 30, 2017) (finding a reduction greater than 50% necessary when the amended complaint only differed slightly from the original complaint).

Here, NSHMS, "a firm whose partners [in their own words] have extensive experience litigating ADA cases," has represented Zablotney for the entirety of the case. ECF No. 38, p. 20. In light of the experience of NSHMS relative to litigating ADA cases, the Court finds the number of hours expended on the Complaint and the First Amended Complaint unreasonable, necessitating a reduction. Even after the reduction for redundancy, the remaining hours expended upon the

Complaint and First Amended Complaint total 44.9 hours.  In light of: (1) the experience of Zablotney's counsel; (2) the fact that the Amended Complaint covered three interrelated causes of action based upon the same set of facts; (3) the Amended Complaint only consisted of approximately seventeen substantive pages; and (4) neither the claims nor the structure of the Amended Complaint presented novel legal issues or drafting challenges for attorneys with the experience of NSHMS, the Court will reduce the hours expended on the entirety of this category to 16 hours, representing a reduction of 28.9 hours.  In applying this reduction, the Court considers the experience of the billing attorneys.  *See Ward*, 2015 WL 263733, at *9 (quoting *Rainey*, 832 F.Supp. at 130 ("To put it another way, normally the higher the allowed hourly rate commanded based upon skill and experience, the shorter the time it should require an attorney to perform a particular task.").[4] The chart below depicts the reductions made by the Court.

| Attorney's Initials: | Hours Requested for Complaint/First Amended Complaint: | Hours Awarded for Complaint Strategy: |
| --- | --- | --- |
| BJS | 21.6 | 7.2 |
| AMB | 13.3 | 1.2 |
| JDM | 11.4 | 1.6 |
| PYM | 5.8 | 1 |
| RB | 0 | 0 |

---

[4] The amount of time dedicated to the Amended Complaint, ECF No. 19, is negligible as it only differs from the original Complaint by 48 words.  The parties found the variance so minor that they stipulated Windber Hospital did not need to file a new answer.  *See* ECF No. 38, p. 3, n. 3.  Thus, the Court finds it unnecessary to account for any time expended upon the Amended Complaint in its analysis of the reasonable hours Zablotney expended in this category.

| CTA | 17.9 | 5 |
| Total Hours: | 70 | 16 |

### 7. Fact Discovery

Zablotney requests an award for 232.5 hours expended on Fact Discovery. Included in the hour log submitted by Zablotney is a breakdown of the hours devoted to the Strategy of Fact Discovery. Under this subcategory are hours devoted to "[a]nalysis, coordination, and discussion with co-counsel" regarding discovery and evidence needed. *See* ECF No. 39-14, p. 9. In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for this subcategory, here 2.2 hours. ECF No. 39-14. Thus, the Court will reduce the hours expended on coordinative efforts during Fact Discovery, by 2.2 hours for each attorney, except BJS who is due the highest hourly rate; this reflects a reduction of 6.6 hours. *See Shelton*, 2016 WL 7394025, at *8.

ADA cases "are fact intensive, highly individualized cases that require extensive discovery and expert witnesses." *Colorado Cross Disability Coalition v. Hermanson Family*, 264 F.3d 999, n.4 (10th Cir. 2001) (quoting Louis S. Rulli, *Employment Discrimination Litigation under the ADA from the Perspective of the Poor: Can the Promise of Title I be Fulfilled for Low Income Workers in the Next Decade?*, 9 TEMP. POL. & CIV. RTS. L. REV. 345, 369, 378-82 (2000)). Regardless, the party requesting attorney's fees bears the burden to demonstrate "that the time actually spent was reasonably necessary to the effective prosecution or defense of the claims." *Whitaker v. Reeder*, No. 2-19-CV-04341-SVW-AFM, 2022 WL 22329130, at *1 (C.D. Cal. Dec. 28, 2022) (citing *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984); *Partners for Health and*

*Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 439 (C.D. Cal. 2012)); *see also Fritz by Fritz*, 711 F.Supp. at 1357 (citing *Hughes v. Repko*, 578 F.2d 483, 487 (3d Cir. 1978)).

Here, Zablotney's counsel failed to provide any evidence to justify the over 200 hours expended during fact discovery, failing to note any support such as how many interrogatories or requests for admission were sent and answered, or even how many documents were produced and requested. Absent any documentation from Zablotney to the contrary, the Court finds the 225.9 hours remaining after reductions for redundancies to be excessive given the nature of this case. *See Castellano*, 164 F.Supp.3d at 715 (reducing the hours billed by half because counsel did not provide "any evidence to justify nearly 90 hours for the preparation of th[at] discovery."). Thus, the Court will further reduce the hours expended by 45 hours.[5] The chart below depicts the reductions made by the Court.

| Attorney's Initials: | Hours Requested for Fact Discovery: | Hours Awarded for Fact Discovery: |
|---|---|---|
| BJS | 54.3 | 41.8 |
| AMB | 47.7 | 33 |
| JDM | 3.3 | 1.1 |
| PYM | 0 | 0 |
| RB | 1.3 | 1.3 |
| CTA | 125.9 | 103.7 |

---

[5] The Court notes that Windber Hospital's counsel billed a total of 91.9 hours relative to the entire fact discovery process and provided a more thorough description of what those hours entailed. One such description of a single hour log read, "Revised and served responses to Plaintiff's Request for Production of Documents; Review and confirm 472 documents to be served. 1.6 hours." ECF No. 40-3, p. 10. Though the time required to complete fact discovery is rarely proportional between parties, the Court finds it unreasonable that Zablotney's counsel would require 250% the time to complete fact discovery as that expended by Windber Hospital's counsel. In light of this and the fact that Zablotney's counsel failed to provide any evidence to justify the hours expended, the Court finds a reduction appropriate. The Court concludes that it is not unreasonable for one party to require 200% the time expended by the opposing counsel as this type of fact discovery usually weighs more heavily on one party.

| Total Hours: | 232.5 | 180.9 |
|---|---|---|

### 8. Expert Discovery

Zablotney requests an award for 95.1 hours expended on Expert Discovery. Included in the hour log submitted by Zablotney is a breakdown of the hours expended on the Strategy for Expert Discovery. Under this subcategory are hours devoted to "[a]nalysis, coordination, and discussion with co-counsel" relating to expert discovery. ECF No. 39-14, p. 9. In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for coordinative efforts, here 2.9 hours. ECF No. 39-14. Thus, the Court will reduce the hours expended in the Strategy for Fact Discovery, by 2.9 hours for each attorney, except BJS who is due the highest hourly rate; this reflects a reduction of 8.7 hours. *See Shelton*, 2016 WL 7394025, at *8. The Court finds the remainder of the hours otherwise expended in this category to be reasonable. The chart below depicts the reductions made by the Court.

| Attorney's Initials: | Hours Requested for Expert Discovery: | Hours Awarded for Expert Discovery: |
|---|---|---|
| BJS | 21.6 | 21.6 |
| AMB | 6.9 | 4 |
| JDM | 24 | 21.1 |
| PYM | 0 | 0 |
| RB | 7.1 | 7.1 |
| CTA | 35.5 | 32.6 |
| Total Hours: | 95.1 | 86.4 |

### 9. Mediation/Settlement Discussions

Zablotney requests an award for 46.4 hours expended on Mediation/Settlement Discussions. Included in the hour log submitted by Zablotney is a breakdown of the hours expended on the Strategy for Mediation/Settlement Discussions. Under this subcategory are hours devoted to "[a]nalysis, coordination, and discussion with co-counsel" regarding settlement discussions as well as hours devoted to "[a]nalysis, coordination, and discussion with opposing counsel" relating to settlement discussions. ECF No. 39-14, p. 10. In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for analysis, coordination, and discussion with co-counsel, here .5 hours. ECF No. 39-14.

Regarding the hours expended on analysis, coordination, and discussion with opposing counsel relating to settlement discussion, Mr. Sweet was Zablotney's only billing attorney; he billed 6.8 hours. ECF No. 39-14, p. 10. However, after a review of the hours expended by Windber Hospital's counsel, Mr. Falavolito, Mr. Falavolito only billed Windber Hospital for 3.1 hours relative to analysis, coordination, and discussion with Zablotney's counsel. Mr. Falavolito's billing provided a more detailed description supporting the time expended than that filed by Mr. Sweet. *See* ECF No. 40-3. In light of this, the Court concludes that the hours Mr. Sweet expended analyzing, coordinating, and discussing with opposing counsel, Mr. Falavolito, should be reduced by 3.7 hours. Thus, the Court will reduce the hours expended on Mediation/Settlement Discussions by 5.2 hours to account for the redundancy in hours billed and the reasonable hours expended on discussion with opposing counsel. *See Shelton*, 2016 WL 7394025, at *8. The Court

finds the remainder of the hours otherwise expended in this category to be reasonable. The chart below depicts the reductions made by the Court.

| Attorney's Initials: | Hours Requested for Mediation/Settlement: | Hours Awarded for Mediation/Settlement: |
|---|---|---|
| BJS | 29.2 | 25.5 |
| AMB | 4.3 | 3.8 |
| JDM | .5 | 0 |
| PYM | 0 | 0 |
| RB | 3.2 | 3.2 |
| CTA | 9.2 | 8.7 |
| Total Hours: | 46.4 | 41.2 |

### 10. Fee Motion

Zablotney requests an award for 53.2 hours expended on the Fee Motion. Under the category of Fee Motion, Zablotney's hour log is broken into three subcategories, "Strategy," "Research and Analysis," and "Drafting and Revising." ECF No. 39-14. Each of these subcategories contains hours devoted to analysis, coordination, and discussion with co-counsel or "[a]nalysis of drafts of briefs and authority identified by co-counsel." ECF No. 39-14, pp. 10-11. In order to eliminate the redundancy of hours billed for coordinative efforts, the Court will reduce the hours of each attorney—except the highest paid, billing attorney—by the lowest number of hours billed by an individual for coordinative efforts. In doing so, a reduction of 14.4 hours is necessary to eliminate the redundancy of billing in this category. *See Shelton*, 2016 WL 7394025, at *8.

While a number of courts "have awarded over twenty hours to counsel for time expended on preparing an initial fee petition," *E.C. v. School Dist. of Philadelphia*, 91 F.Supp.3d 598, 611 (E.D. Pa. 2015) (citing *Trucksess*, 2011 WL 6415047, at *5-6 (awarding over thirty hours); *Gonzalez v. Bustleton Servs., Inc.*, No.08-4703, 2010 WL 3282623, at *3 (E.D. Pa. Aug. 18, 2010) (awarding over twenty hours); *Ryan P. ex rel. Christine P. v. Sch. Dist. of Philadelphia*, No.07-2903, 2008 WL 724604, at *5 (E.D. Pa. Mar. 18, 2008) (awarding 24 hours)); *Arneault v. O'Toole*, No. 11-95 Erie, 2016 WL 7029620, at *10 (W.D. Pa. Dec. 2, 2016) (finding 68.3 hours spent working on fee petition to be reasonable), the reasonableness of the hours expended upon the fee motion depends greatly upon the nature of the case, including the stage of litigation at which it is filed, the length of time the petition covers, and the complexity of the arguments therein.   In addition to these factors, the hours expended upon a fee motion are subject to a reduction based upon the success achieved.  *See Souryavong v. Lackawanna County*, 159 F.Supp.3d 514, 538-39 (M.D. Pa. 2016) (recognizing 17 hours to prepare a fee petition as reasonable); *Castellano*, 164 F.Supp.3d at 717 (reducing the hours reasonably expended by half, recognizing 10.6 hours as reasonable).

The Third Circuit has explained that "the *Hensley* decision applies not only to litigation on the merits but also to the degree of success achieved in litigating the fee award." *Student Public Interest Research Group of New Jersey, Inc. v. AT&T Bell Laboratories*, 842 F.2d 1436, 1455 (3d Cir. 1988) (citing *Hensley*, 758 F.2d at 918-21).  For this reason, "where fee applicants do not fully succeed in recovering their fees, the fee award must be reduced to reflect incomplete success on the fee award." *Id.; see Ward*, 2015 WL 263733, at *10 (recognizing 13.27 hours for drafting the fee petition and accompanying memorandum, writing an affidavit, updating a resume, and

researching and drafting the reply in the context of an ADA and Rehabilitation Act case as reasonable but reducing the amount by 25% because it was not fully successful).

Zablotney requested a total of $371,299.57, including $333,490.00 in attorney's fees and $37,809.57 in costs and expenses. The Court has awarded Zablotney a total of $151,030.43. This reflects approximately 40% success on Zablotney's Motion or Attorneys' Fees and Costs, ECF No. 37. Thus, the hours expended on the fee motion remaining after reductions for redundancies will be further reduced by approximately 60%. The chart below depicts the reductions made by the Court.

| Attorney's Initials: | Hours Requested for Fee Motion: | Hours Awarded for Fee Motion: |
|---|---|---|
| BJS | 5.9 | 2.3 |
| AMB | 6.2 | 1 |
| JDM | 4.6 | .4 |
| PYM | 0 | 0 |
| RB | 21.1 | 7 |
| CTA | 15.4 | 4.7 |
| Total Hours: | 53.2 | 15.4 |

## 11. Determination of Reasonable Hours

In order to demonstrate that the "amount of time spent on the case was reasonable, the party must present more than simply [a] record demonstrating the time actually spent on the case," but must instead demonstrate "that the time actually spent was reasonably necessary to the effective prosecution or defense of the claims." *Whitaker*, 2022 WL 22329130, at *2 (citing *Sealy, Inc*, 743

F.2d at 1385; *Partners for Health and Home, L.P*, 488 B.R. at 439). As expressed in *Rode*, providing an otherwise sufficient, aggregated, computer-generated summary sheet risks a reduction for excessiveness due to the appearance that more hours were spent on a single task than were in actuality. *See* 892 F.2d at 1191. Should Zablotney's counsel have desired to avoid such an appearance, greater detail should have been submitted to the Court in the otherwise sufficiently specific hour log. Thus, the Court awards Zablotney a lodestar amount of $120,450.10, reflecting the product of the reasonable hourly rates and reasonable hours expended set forth in the chart below.

| Attorney's Initials: | Awarded Hourly Rate: | Awarded Hours: | Total Award: |
|---|---|---|---|
| BJS | $450.00 | 105.9 | $47,655.00 |
| AMD | $336.00 | 52.2 | $17,539.20 |
| JDM | $436.00 | 26.7 | $11,641.20 |
| PYM | $622.00 | 12.2 | $7,588.40 |
| RB | $221.00 | 18.6 | $4,110.60 |
| CTA | $179.00 | 178.3 | $31,915.70 |
| Total: | | 393.9 | $120,450.10 |

## C. Reasonable Litigation Expenses and Costs

Under the ADA or the Rehabilitation Act, the prevailing party may be awarded a reasonable attorney's fee, including litigation expenses and costs. *See* 42 U.S.C.A. § 12205; 29 U.S.C.A. § 794a(b). Initially, Zablotney requested an award of $41,949.97 in litigation expenses and costs in addition to the attorneys' fees discussed above. ECF No. 38, p. 29. Windber Hospital

challenged Zablotney's request for cost and expenses in light of the fact that Zablotney failed to introduce any documentation in support of the request. ECF No. 40, pp. 19-20. Zablotney rectified this issue, including documentation of costs in the Reply, ECF No. 41, and adjusting the requested amount to $37,809.57 in light of the realization that one deposition had accidentally been paid for twice. ECF No. 41, p. 7, n.5.

Zablotney's requested $37,809.57 in litigation expenses and costs may be broken down into the following categories: (1) Medical records—Zablotney's health records which were obtained prior to commencing this action—totaling $71.67; (2) Court fees—fees associated with filing, service of the Complaint and a subpoena, mediation, and pro hac vice admission—totaling $4,852; (3) Food—meals, coffee, and miscellaneous snacks—totaling $690.22; (4) Travel and lodging—gas station charges, hotel charges, and an Uber charge—totaling $999.72; (5) Expert fees—retainer, inspection, report, and consultation—totaling $16,492.06; (6) Deposition expenses, totaling $14,672.45; (7) FedEx shipment, totaling $12.75; and (8) Trial binders, totaling $18.70. While Zablotney rectified the lack of documentation present in the initial Motion for Attorney's Fees and Costs, ECF No. 38, the litigation expenses and costs requested by counsel "are subject to the Court's determination that they are reasonable and necessary." *Apple Corps. Ltd. v. International Collectors Soc.*, 25 F.Supp.2d 480, 497 (D. NJ. 1998). For the foregoing reasons and because not all costs and litigation expenses requested are compensable under the relevant statutes or reasonable, the Court awards Zablotney $30,580.33 in costs, reflecting a reduction of $7,229.24 from the requested amount of $37,809.57.

### 1. Medical Records

Zablotney requested an award of $71.67 for costs associated with obtaining medical records. "Medical records that are 'possibly relevant' to a plaintiff's damages

are recoverable litigation expenses." *Miles v. Walmart Associates, Inc.*, No. 4:19-cv-00756-CLM, 2022 WL 275520, at *6 (N.D. Ala. Jan 28, 2022). Here, Zablotney's medical records were indeed relevant and necessary to evaluate any ADA, Rehabilitation Act, or ACA claim Zablotney may have brought against Windber Hospital. ECF No. 19, ¶ 3. As such, the Court finds this expense both reasonable and necessary and therefore, approves Zablotney's requested $71.67 for costs associated with obtaining medical records.

### 2. Court Fees

Zablotney requested an award of $4,852 for costs associated with court fees. The costs associated with filing fees and service are compensable under the ADA. *See Feltzin v. Union Mall LLC*, 393 F.Supp.3d 204, 218 (E.D. N.Y. 2019) (citing *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F.Supp.2d 260, 269 (E.D. N.Y. 2008)); *Trujillo v. La Valley Foods, Inc.*, No. 1:16-cv-01402-AWI-BAM, 2017 WL 2992453, at *7 (E.D. Cal. July 14, 2017) (citing 42 U.S.C. §12205; *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)). Likewise, the ADA permits recovery of mediation fees. *Hansen v. Deercreek Plaza, LLC*, 420 F.Supp.2d 1346, 1355 (S.D. Fl. 2006) (citing *Clark v. Peco, Inc.*, No. 97-737-HU, 1999 WL 398012, at *12 (D. Or. April 16, 1999)); *Vaughn v. Parkwest Medical Center*, No. 3:15-CV-228-PLR-DCP, 2019 WL 13298887, at *17 (E.D. Tenn. Feb. 15, 2019) (citing *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 827 (6th Cir. 2013)). Thus, Zablotney's costs associated with filing the Complaint, serving the Complaint and a subpoena, and the mediation fee, totaling $4,782, are compensable, and the Court finds them to be both reasonable and necessary.

The Court, however, declines to award Zablotney costs associated with pro hac vice admission. Neither hours spent to obtain pro hac vice admission, nor the filing fees associated with such admission are compensable under the ADA. *See Kadribasic v. Wal-Mart Inc.*, No. 1:19-

cv-03498-SDG, 2022 WL 898346, at *6 (N.D. Ga. Mar. 28, 2022) (declining to award pro hac vice admission costs under the ADA); *Kennedy v. R.V. Corp.*, CV 2:19-092, 2021 WL 744160, at *7 (S.D. Ga. Feb. 25, 2021) (noting that attorney fees associated with pro hac vice admission are not recoverable); *Tarango v. City of Bakersfield*, No. 1:16-cv-0099-JLT, 2017 WL 5564917, at *21 (E.D Cal. Nov. 20, 2017) (holding that an attorney should not expect either a client or losing party to pay for pro hac vice admissions—an expense paid for the privilege of practicing law in that specific court); *Harty v. Par Builders, Inc.*, No. 12-CV-2246 (CS), 2016 WL 616397, at *5 (S.D. N.Y. Feb. 16, 2016) ("[T]he decision not to use counsel already admitted in this District was entirely up to Plaintiff, and Defendant need not pay for that choice."). As such, the costs associated with pro hac vice admission are not compensable. The Court will therefore reduce Zablotney's requested cost for Court fees by $70.00 and award Zablotney $4,782.00 in costs associated with court fees.

### 3.  Food

Zablotney requested an award of $690.22 for costs associated with five lunches, coffee on one occasion, two miscellaneous food purchases—one from a vending machine and one from a gas station—and one working dinner. Though the Third Circuit itself has not addressed whether the cost of attorneys' meals is reimbursable under the ADA, *see Apple Corps. Ltd.*, 25 F.Supp.2d at 499, courts outside of this circuit have held that the cost of food may be recoverable under the ADA. *See Miles*, 2022 WL 275520, at *6 (awarding costs for meals as a reasonable litigation expense for an out-of-town trial); *Vaughn*, 2019 WL 13298887, at *18 (awarding costs for meals as a reasonable litigation expense during in-town depositions and trial).[6] Still, these costs must be

---

[6] Though the Third Circuit has not addressed this issue in regard to ADA claims, courts in this circuit have awarded the cost of meals in cases that do not involve ADA claims. *See In re Viropharma Inc. Securities Litigation*, No. 12-2714, 2016 WL 312108, at *18 (E.D. Pa. Jan. 25, 2016).

both reasonable and necessary in order to be reimbursable. *See Apple Corps. Ltd.*, 25 F.Supp.2d at 497.

The Court finds the five lunch costs, totaling $170.08, reasonable and necessary as they were limited and incurred during: meetings between Zablotney and her counsel, the site inspection, Zablotney's deposition, and preparation for depositions. Likewise, the one-time purchase of coffee and the two miscellaneous food purchases, totaling $13.90, are found to be reasonable and necessary as they correlate to the date of the site inspection and the settlement conference, respectively. However, the Court finds the requested cost for the working dinner on July 10, 2023, to be unreasonable, necessitating a reduction. Zablotney requests the cost of a working dinner, the evening before the settlement conference, totaling $506.24. No indication is given as to why such an extravagant dinner should be deemed either reasonable or necessary—Zablotney does not articulate how many individuals needed to be fed or why that number was necessary to prepare for the settlement conference the following day. As Zablotney does not indicate the number in attendance for the working dinner or offer any other explanation as to its necessity or reasonability, the Court will reduce this amount to $75.00, a reduction of $431.24. In making this reduction, the Court takes into consideration that only two attorneys attended the conference the following day— indicating, absent any showing to the contrary by Zablotney, that the large amount requested is unreasonable. Thus, after reductions, the Court finds both reasonable and necessary an award of $258.98 for costs associated with food throughout litigation.

### 4. Travel and Lodging

Zablotney requested an award of $999.72 for costs associated with travel and lodging. While some courts have found the costs associated with travel and lodging compensable, *see Preziosi v. Mansberry*, No. 2:20-CV-001163-PLD, 2023 WL 2908882, at *4 (W.D. Pa. Apr. 12,

2023); *Haynes v. City of Montgomery*, No. 2:06-CV-1093-WKW, 2008 WL 4495711, at *13 (M.D. Ala. Oct. 6, 2008); *Steiner v. Hercules*, 835 F.Supp. 771, 794-95 (D. Del. 1993), courts in this circuit have often declined to award compensation for travel, travel costs, or the costs of local counsel in the event a party hires counsel from outside the forum without a showing that forum counsel are unwilling to represent the plaintiff. *See Kissinger v. Mennonite Home*, No. 20-3000, 2022 WL 596300, at *8 (E.D. Pa. Feb 28, 2022) (citing *Interfaith Comty. Org. v. Honeywell Intern., Inc.*, 426 F.3d 694, 710 (3d Cir. 2005); *Melissa G. v. School Dist. of Philadelphia*, No. 06-5527, 2008 WL 160613, at *5 (E.D. Pa. Jan. 14, 2008)); *Kurschinske v. Meadville Forging Co.*, No. 06-87, 2008 WL 4462294, at *4 (W.D. Pa. Sept. 30, 2008) (citing *Interfaith Comty.*, 426 F.3d at 710; *Hahnemann University Hospital v. All Shore, Inc.*, 514 F.3d 300, 311-12 (3d Cir. 2008); *Pretlow v. Cumberland County Bd. of Social Services*, No. Civ. 4-2885(FLW), 2005 WL 3500028, at *9 (D.N.J. Dec. 20, 2005)); *Sheffer v. Experian Information Solutions, Inc.*, 290 F.Supp 538, 552 (E.D. Pa. 2003) (quoting *Polcino v. City of Philadelphia*, No. 89-4672, 1991 WL 124592, at *2 (E.D. Pa. July 3, 1991)).  This restriction upon awarding compensation for travel and travel costs to out of forum counsel when a showing of necessity has not been made is presumptively due to the fact that when a party chooses to retain out of forum counsel despite the availability of forum counsel, the party chooses to exercise a strategic litigation tactic, the costs of which should not be borne by the opposing party.[7]

Here, Zablotney's requested award for travel and lodging may be broken down into two categories: (1) $76.67 in charges at gas stations and (2) $923.05 in costs associated with Mr. Miller's lodging for attendance of the July 11 settlement conference, including hotel charges and

---

[7] This is the same policy which renders pro hac vice admission costs non-compensable under the ADA. *See Harty*, 2016 WL 616397, at *5 ("[T]he decision not to use counsel already admitted in this District was entirely up to Plaintiff, and Defendant need not pay for that choice.").

an Uber to the airport.  The Court notes that Mr. Miller traveled from California to attend the July

11th settlement conference alongside Mr. Sweet who is based out of Pittsburgh, Pennsylvania,

resulting in the need for Mr. Miller's lodging.  As discussed above, the Third Circuit has noted,

outside of the ADA context, that

> [U]nder normal circumstances, a party that hires counsel from outside the forum of
> the litigation may not be compensated for travel time, travel costs, or the costs of
> local counsel. However, where the forum counsel are unwilling to represent the
> plaintiff, such costs are compensable.

*Interfaith Comty.*, 426 F.3d at 710.  Not only was forum counsel available to Zablotney as

evidenced by Mr. Sweet's representation of Zablotney, but Mr. Sweet also attended the settlement

conference on July 11th. Thus, the presence of out of forum counsel—Mr. Miller— in addition to

forum counsel—Mr. Sweet—at the settlement conference reflects strategic litigation tactics chosen

by Zablotney, the costs of which should not be borne by Windber Hospital despite the positive

impact Mr. Miller's presence had upon the conference.  As such, the Court declines to award

Zablotney the $923.05 associated with Mr. Miller's lodging for the settlement conference.[8]  The

Court, however, does find the gas station charges to be reasonable and necessary and therefore

awards Zablotney $76.67 for costs associated with travel.  *See Kurschinske*, 2008 WL 4462294, at

*5 (declining to award lodging costs for out of forum counsel but awarding reasonable costs for

gasoline).

---

[8] The Court additionally notes that Zablotney filed duplicative documentation of lodging charges for Mr. Miller
surrounding the settlement conference. Zablotney requested reimbursement for two charges involving stays at
Springhill Suites. ECF No. 42-1, p.2. Though these charges carry different dates in the filed chart—July 6, 2023, and
July 12, 2023, respectively—ECF No. 42-1, p.2, the accompanying documentation notes that both charges include the
same room rates at the same hotel chain and the same check-in and check-out days. *Cf* ECF No. 42-1, pp. 37-38 *with*
ECF No. 42-1, p. 43. The only variation is that the later documentation includes an itemization of all charges, including
fees and purchases whereas the earlier documentation is merely the confirmation of the reservation.  As such, even if
the Court had awarded fees for lodging, the award would have been subject to a reduction of $408.12 due to the
duplicative filing.

### 5. Expert Fees

Zablotney requested an award of $16,492.06 for costs associated with expert fees. A prevailing party's reasonable expert fees are recoverable under the ADA and Section 504 of the Rehabilitation Act. *See Mortland*, 2022 WL 3586661, at *8; *Elizabeth S.*, 2012 WL 2469547, at *5 (citing *A.W. v. Jersey Pub. Schs.*, 486 F.3d 791, 803-04 (3d Cir. 2007); 42 U.S.C. § 2000e-5(k)); *Hansen*, 420 F.Supp.2d at 1353-54 (citing *Lovell*, 303 F.3d at 1058). Zablotney chose the services of an expert who had to travel from the state of Florida, which, as a result, increased the cost of his services. ECF No. 42-1, p. 18. Even in light of this increased fee, Zablotney's expert fees totaled $16,492.06. ECF No. 42-1. Conversely, Windber Hospital accrued $34,980 in expert fees for the services of Mr. Rappoport, who is based out of Pennsylvania. ECF No. 39-8, pp. 1-2. Although the Court is not inclined to require an opposing party to pay for an expert's unnecessary travel expenditures, the Court finds Mr. Derry's fee, even with the inclusion of travel fees, to be reasonable when compared to the expert fee paid by Windber Hospital to Mr. Rappoport. As such, the Court finds this expense both reasonable and necessary and, therefore, approves Zablotney's requested $16,492.06 for costs associated with expert fees.

### 6. Deposition Expenses

Zablotney requested an award of $14,672.45 in relation to deposition expenses. The costs associated with depositions are recoverable under the ADA if they are "necessarily obtained" for use in the case, regardless of whether the case goes to trial. *Robbins v. Scholastic Book Fairs*, 928 F.Supp. 1027, 1035-36 (D. Or. 1996) (citing *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1439 (9th Cir. 1993)); *Dansie v. Union Pacific Railroad*, No. 2:17-cv-01058-JNP, 2023 WL 6377580, at *6 (D. Utah Sept. 29, 2023); *Walsh v. Boston University*, 661 F.Supp.2d 91, 117 (D. Mass. 2009). In the instance that costs for both a video and transcription of a deposition are sought, some

courts have required an additional showing as to "why it was necessary to have both a video deposition and a transcribed deposition for use in the case." *H.C. v. Bradshaw*, 426 F.Supp.3d 1266, 1285 (S.D. Fl. 2019).

In requesting $14,672.45 in association with deposition expenses, Zablotney offered no explanation regarding whether the depositions in question were necessarily obtained for use in the case. It is clear from Zablotney's filings that the depositions of Mr. Pudliner, Windber Hospital's Director of Plant Operations, ECF No. 38, p. 10, and Mr. Rappoport, Windber Hospital's expert, were necessarily obtained for use in the case. This is apparent, in part, as a result of the heavy reliance upon Mr. Rappoport's deposition in Zablotney's Brief in Support of the Motion for Reasonable Attorneys' Fees and Costs. *See* ECF No. 38. However, Zablotney failed to demonstrate, through conduct or by explanation in the fee petition, that the depositions of Spinos, Cotchen, and Petak were necessarily obtained for use in the case. Because Zablotney failed to carry her burden of proof and provide any explanation as to the necessity and reasonability of these three additional depositions, let alone demonstrate why it was necessary to have both a video and transcription of Spinos' and Cotchen's depositions, the Court declines to award Zablotney the associated costs. Thus, the Court will reduce the requested amount by $5,773.50 and award Zablotney a total of $8,898.95 for the costs associated with the depositions.

### 7. FedEx Shipment

Zablotney requested an award of $12.75 for costs associated with a FedEx shipment. Though Zablotney has provided ample documentation to demonstrate that a payment was made to FedEx in the amount of $12.75 on September 21, 2022, there is neither an accompanying explanation as to what was shipped or how the shipment relates to the instant action, nor is such a

relationship readily identifiable by the Court. Thus, the Court declines to award Zablotney the requested $12.75 for the FedEx shipment.

### 8. Trial Binders

Zablotney requested an award of $18.70 for costs associated with the purchase of trial binders. Costs associated with making binders qualify as attorney overhead and are not recognized as compensable costs under the ADA. *See Elizabeth S.*, 2012 WL 2469547, at *6 (citing *Yong Fang Lin v. Tsuru of Bernards, LLC*, No. 10-2400, 2011 WL 2680577, at *4 (D. N.J. July 8, 2011)); *Fink v. City of New York*, 154 F.Supp.2d 403, 415 (E.D. N.Y. 2001). For this reason, the Court declines to award Zablotney the requested $18.70 for the purchase of trial binders.

### D. Monitoring Costs

Zablotney asserts that Windber Hospital should also be held responsible for reasonable costs and fees for Zablotney's counsel to monitor compliance with the settlement agreement over the next three years. ECF No. 38, pp. 20-22. While monitoring costs may be recovered under the ADA, Zablotney points to no authority that supports an award, in advance, of the requested $17,400 based upon counsel's speculative estimates. Instead, Zablotney relies on cases that establish a prevailing party's ability to recover monitoring costs under the ADA based upon either a settlement agreement, be it an agreed upon final number or amount costs are not to exceed, *Civil Rights Education and Enforcement Center v. Ashford Hospitality Trust, Inc.*, No. 15-cv-00216-DMR, 2016 WL 1177950, at *2 (N.D. Cal. Mar. 22, 2016); *Lane v. Brown*, No. 3:12-cv-00138, 2016 WL 589684, at *3 (D. Or. Feb. 11, 2016); *Heinzl v. Cracker Barrel Old Country Store*, No. 14-cv-1455, Dkt. 172, ¶ 11, 2015 U.S. Dist. LEXIS 2795 (W.D. Pa. Jan. 5, 2015), or based upon monitoring which has already been undertaken. *See Jackson v. Los Lunas Ctr.*, 489 F. Supp. 2d 1267, 1273-74 (D.N.M. 2007). While the settlement agreement gave Zablotney monitoring rights

for three years, the parties did not agree to an amount to cover the monitoring costs. ECF No. 39-1, p. 5. Additionally, Zablotney has not yet undertaken any monitoring activity to enable counsel to provide the Court documentation of the costs associated. As there is no record evidence from which the Court can assess whether the estimate provided by Zablotney's counsel is either reasonable or necessary, the Court directs the Parties to meet and confer to determine a mutually agreed upon annual cost for monitoring. If the Parties are unable to mutually agree upon terms, the Court will permit Zablotney to file a petition with the Court documenting and requesting monitoring costs at the completion of the first year's monitoring and annually thereafter for the duration of the agreed upon three year period. Windber Hospital will be given opportunity to respond but reply and sur reply will be upon Order of the Court. Further details are included in the accompanying Order.

### E. Requested Reduction of the Lodestar Amount Relative to Percentage of Recovery

Windber Hospital contends that the lodestar amount should be significantly reduced to reflect that Zablotney "only obtained successful results on less than 15% of" the claims raised. ECF No. 40, p. 9. Windber Hospital arrives at this conclusion by noting the cost of modifications Mr. Derry, Zablotney's expert, estimated would be necessary for Windber Hospital's facilities to become compliant with the ADA—$509,500.00—and contrasting that amount with the estimated cost of modifications agreed to by the parties in the settlement agreement—$71,000. *Id.* at p. 21. From this, Windber Hospital argues that the Court should lower the lodestar determination by 86% to reflect the results obtained as Zablotney "conceded a loss of over $438,500.00." *Id.* The Court finds this argument unavailing.

The Supreme Court has noted that "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley*, 461 U.S. at 434. However, it is only in the "rare and

exceptional" circumstance that the lodestar determination does not adequately take into account a factor that may properly be considered in determining a reasonable fee, that the district court may adjust the lodestar amount based upon additional considerations, namely the results obtained. *See Perdue*, 559 U.S. at 552-53; *S.S. Body Armor I., Inc.*, 927 F.3d at 773; *Gunter*, 223 F.3d at 195 n.1; *see generally Hensley*, 461 U.S. at 434. The reduction of a lodestar amount based upon results obtained is only relevant when "the plaintiff's lawsuit contains distinctly different claims for relief that are based on different facts and legal theories[;]" in such an instance, "the unsuccessful claims cannot be considered to have been litigated in furtherance of the result achieved and should be excluded." *Dee* 548 Fed.Appx. at 64 (quoting *Hensley*, 461 U.S. at 434-35).

Here, Zablotney's ADA, Rehabilitation Act, and ACA claims cannot be said to be distinctively different claims based on different facts and legal theories. When a plaintiff brings suit under both the ADA and Rehabilitation Act, the Third Circuit "often address[es] both claims in the same breath." *Berardelli v. Allied Services Institute of Rehabilitation Medicine*, 900 F.3d 104, 117 (3d Cir. 2018) (quoting *Chambers ex rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009)); *Disabled in Action of Pennsylvania v. Southeastern Transportation Authority*, 635 F.3d 87, n.5 (3d Cir. 2011) (quoting *Pennsylvania Protection and Advocacy, Inc. v. Pennsylvania Dep't of Pub. Welfare*, 402 F.3d 374, 379 n.3 (3d Cir. 2005)) ("In light of the similarities between the ADA and R[ehabilitation] A[ct] and their implementing regulations, we construe and apply them in a consistent manner."). In like manner, the ACA has been interpreted as a federal, antidiscrimination statute that is interrelated with the ADA and Rehabilitation Act such that claims under all three statutes have been analyzed through the lens of a Title III ADA analysis. *See Jones v. CVS*, No. 1:21-CV-157, 2022 WL 4536124, at *3-4 (M.D. Pa. Sept. 28, 2022). In addition to the caselaw which establishes the interrelated legal theories

between Zablotney's three claims, Zablotney's Amended Complaint makes clear that all three claims are predicated upon the same set of facts. ECF No. 19, ¶¶ 28, 39, 54. Thus, even if the Court agreed with Windber Hospital's estimation that Zablotney failed to achieve the entire relief initially sought, Zablotney's three claims are predicated on a common set of facts and interrelated legal theories, prohibiting the reduction of the lodestar amount on the basis of results obtained as each claim was litigated in furtherance of the result achieved.

### F. Rule 11 Sanctions

Windber Hospital contends that Zablotney's fee petition is "outrageous," "specious," "submitted for an improper purpose," and "not warranted by existing law," ECF No. 40, pp. 2, 21, 22, entitling it to an award of costs associated with responding to Zablotney's fee petition as a sanction under Rule 11 of the Federal Rules of Civil Procedure. The Court disagrees.

Rule 11 of the Federal Rules of Civil Procedure provides in pertinent part that:

> **(b)** . . . By presenting to the court a pleading, written motion, or other paper-- whether by signing, filing, submitting, or later advocating it--an attorney . . . certifies that to the best of . . . [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(1)-(2). The central purpose of Rule 11 is to reduce abuse of the legal system by deterring future misconduct and, in doing so, streamline the administration and procedure of the federal courts. *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *Manufacturers and Traders Trust Co. v. Minuteman Spill Response, Inc.*, 999 F.Supp.2d 805, n.13 (W.D. Pa. 2013) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,

393 (1990)).  To effectuate this purpose, Rule 11(c) supports the imposition of sanctions should it

be found that a party violated Rule 11(b).  Fed. R. Civ. P. 11(c).  Rule 11 sanctions are only to be

imposed "in the exceptional circumstance where a claim or motion is patently unmeritorious or

frivolous," *McCarthy v. Minnesota Lawyers Mutual Ins. Co.*, No. 3:23-CV-450, 2023  WL

4636889 at *3 (July 19, 2023, M.D. Pa.) (quoting *Doering*, 857 F.2d at 194) (internal quotation

marks omitted) and are only to be rise to the minimum level of severity required to serve their

intended purpose.  *See* Fed. R. Civ. P 11 at (c)(4); *Doering*, 857 F.2d at 194.

To support its argument that Rule 11 sanctions should be imposed, Windber Hospital sets

forth six contentions, including that: Zablotney's motion: (1) "Failed to provide any documentation

to support its requested rates"; (2) "Failed to cite any precedent, controlling or otherwise to support

its requested rates"; (3) "Knowingly hid double, triple, quadruple, and quintuple billing in a

deceptive summary [o]f its time"; (4) "Knowingly hid double, triple, quadruple, and quintuple

billing by not providing the dates and actual times of each task requested"; (5) "Made unsupported

statements such as: '[a]ll hours reflected in Exhibit N were reasonable and necessary to the

prosecution of this case'"; and (6) "Asserted that the request[ed] rates are 'generally consistent

with the CLS fee schedule'."  ECF No. 40, p. 22.  The contentions Windber Hospital offered in

support of Rule 11 sanctions do not accord with the Court's findings, and therefore, the Court does

not find Rule 11 sanctions to be merited.

Zablotney's counsel supported its requested rate in the form of: caselaw indicating awards

NSHMS attorneys received previously, the CLS fee schedule, and the experience and skill of

Zablotney's counsel.  Zablotney failed to establish a prima facie case that the requested rate is a

reasonable reflection of the market rate not because it failed to support its requested rate through

documentation or caselaw, but because the documentation and caselaw introduced were not

reflective of a reasonable hourly rate in *this* district.  Additionally, as discussed above, the hour log Zablotney submitted was sufficiently specific for the Court to assess the reasonableness of the hours expended.  While reductions were necessary, the log did not *hide* "double, triple, quadruple, and quintuple billing" as a result of utilizing an aggregated, computer-generated summary as Windber Hospital claims.  Zablotney's fee petition in no way represents the type of unmeritorious, frivolous, or baseless motion that constitutes an abuse of the legal system and that merits Rule 11 sanctions.  Thus, the Court rejects Windber Hospital's argument that Rule 11 sanctions should be imposed in response to Zablotney's fee petition.

### G.  Rule 26 and Rule 37 Sanctions

Zablotney contends in her Brief in Support of the Motion for Attorneys' Fees that Windber Hospital should be subject to sanctions under Rules 26 and 37 of the Federal Rules of Civil Procedure.  ECF No. 38, pp. 4-7.  Zablotney asserts that Windber Hospital should be subject to sanctions because of the following actions: (1) improper certification under Rule 26(g)— sanctionable under Rule 26(g)(3); (2) failure to supplement responses under Rule 26(e)(1)(A)— sanctionable under Rule 37(c)(1); and (3) failure to admit information requested under Rule 36 that was later proven true—sanctionable under Rule 37(c)(2).

During discovery, Zablotney hired Mr. Derry to perform an accessibility inspection of Windber Hospital's facilities.  ECF No. 39-4.  Upon completion of that inspection, Zablotney sent Windber Hospital a Rule 36 Request for Admission asking Windber Hospital to admit the accessibility barriers Mr. Derry identified.  ECF No. 39-5.  Windber Hospital did not admit one of Zablotney's requested admissions, but later hired its own expert, Mr. Rappoport, to perform his own investigation.  ECF Nos. 39-5, 39-6.  In light of this investigation, Windber Hospital did not supplement its responses to Zablotney's Requests for Admissions.  Yet when deposed, Mr.

Rappoport acknowledged the existence of many of the same issues identified by Mr. Derry.  ECF No. 39-7, at 40:15-41:9; 126:15-127:21; 133:5-15; 157:13-21; 187:12-18; 226:14-18; 235:17-236:7; 240:2-6; 240:23-241:6; 241:19-242:21; 246:6-21.  Following Mr. Rappoport's deposition, Windber Hospital still did not supplement its responses to Zablotney's Requests for Admissions. Zablotney argues that, even before Mr. Rappoport's report, any reasonable inquiry would have resulted in Windber Hospital's discovery of accessibility barriers and that because Windber Hospital failed to supplement its responses to the Requests for Admissions in light of Mr. Rappoport's findings, it should be subjected to sanctions for violating Rule 26(e)(1)(A)[9] and Rule 26(g)(1)(A).  ECF No. 38, p. 12.  Additionally, Zablotney argues that because the requested admissions were proven to be true despite Windber Hospital's response, Windber Hospital should be subject to Rule 37(c)(2) sanctions.  *Id.*, p. 7.

### 1.  Rule 26(g) Sanctions

Federal Rule of Civil Procedure 26(g) provides, in pertinent part, the following obligations:

> **(1)**    ***Signature Required: Effect of Signature.*** Every. . . discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name—or by the party personally, if unrepresented—and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>
> > (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
> > (B) with respect to a discovery request, response, or objection, it is:

---

[9] Federal Rule of Civil Procedure 26(e)(1)(A) provides in pertinent part:

> (1)    ***In General.*** A party who has responded to . . . [a] request for admission—must supplement or correct its disclosure or response:
> > (A) In a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . .

Fed. R. Civ. P. 26(e)(1)(A).

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior to discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1).  Rule 26(g)(3) mandates the imposition of sanctions should improper certification occur in violation of Rule 26(g)(1).  It reads in pertinent part:

> **(3) *Sanction for Improper Certification.*** If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses including attorney's fees, caused by the violation.

Fed. R. Civ. P. 26(g)(3).  In this way, Rule 26(g) provides that sanctions will be imposed "for noncompliance with that rule if without substantial justification a certification is made in violation of the rule."  *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 139 (3d Cir. 2009).  Substantial justification "has been regarded as justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  The test of substantial justification is satisfied if there exists a genuine dispute concerning compliance."  *Id.* at n.23 (quoting *Tolerico v. Home Depot*, 205 F.R.D. 169 (M.D. Pa. 2002)).

  In support of Rule 26(g) sanctions, Zablotney specifically cites to Windber Hospital's response to ¶ 29 of its Request for Admission, ECF No. 39-5, where Windber Hospital objected to and denied, "based on lack of information and belief," that there were designated accessible parking spots in parking lot "E" with sloping exceeding 2.1% gradient.  In fact, Windber Hospital

objected to and denied, "based on lack of information and belief," that any of the parking lots, designated "A"-"G" have designated accessible parking spots with sloping exceeding 2.1% gradient. ECF No. 39-5, ¶¶ 25-31. Yet, both Mr. Derry, in his report, and Mr. Rappoport, in his deposition, agreed that in one parking lot, three accessible parking spaces without access aisles had a 5.1% running slope by 3% cross slope. ECF No. 39-7, at 155:25-156:24. In the context of this discussion, Mr. Rappoport stated,

> Again, whenever I saw something more than 2 percent, I realized that it was a challenge and so I didn't feel the need to do what he [Mr. Derry] did. I don't know why he did what he did because it's so evident the problem, but he did it and God bless, he did it.

ECF No. 39-7, at 156:19-24. In this way, Zablotney contends that at the time Windber Hospital responded to the Requests for Admission, which predated Mr. Rappoport's deposition or report, "any reasonable inquiry—as required under Federal Rule of Civil Procedure 26(g)—would have highlighted the violations." ECF No. 38, p.12.

The Court agrees that any reasonable inquiry would have provided Windber Hospital the information needed to answer the Request for Admission it objected to and denied based on lack of information and belief regarding the sloping of accessible parking spaces. The unique character of facts and mathematical measurements is that they may be inquired into equally regardless of a party's position in litigation. Here, while Mr. Rappoport determined the problem was "so evident" that he did not need to measure the grading, any measurement would have provided Windber Hospital with the requisite information to answer the Request for Admission. In this way, there exists no genuine dispute regarding compliance that would substantially justify Windber Hospital in its response to Zablotney's Requests for Admission regarding the sloping of accessible parking

spaces.[10]  Thus, the Court finds that Rule 26(g)(3) mandates sanctions in this circumstance and

that payment of the reasonable attorney's fees and costs caused by the violation is the appropriate

sanction to be imposed upon the party.  As the Court is already awarding Zablotney expenses,

including attorney's fees, for the entirety of the proceedings, including relative to the violative

conduct, the sanctions imposed are included in the awarded lodestar amount of $120,450.10.

### 2.  Rule 37(c)(1) Sanctions

Federal Rule of Civil Procedure 26(e) provides in pertinent part:

> (1)     *In General.* A party who has responded to . . . [a] request for
> admission—must supplement or correct its disclosure or response:
>
> > (A)     In a timely manner if the party learns that in some material
> > respect the disclosure or response is incomplete or incorrect, and if
> > the additional or corrective information has not otherwise been
> > made known to the other parties during the discovery process or in
> > writing . . .
>
> > **(2)** *Expert Witness.* For an expert whose report must be disclosed under
> > Rule 26(a)(2)(B), the party's duty to supplement extends both to information
> > included in the report and to information given during the expert's
> > deposition . . .

Fed. R. Civ. P. 26(e).  In response to this mandate, Rule 37(c)(1) authorizes the court to impose

sanctions where a party fails to meet the requirements imposed by Rule 26(a) or (e).  Rule 37(c)(1)

provides in pertinent part:

> (1) **Failure to Disclosure or Supplement.** If a party fails to provide information .
> . . as required by Rule 26(a) or (e), the party is not allowed to use that
> information or witness to supply evidence on a motion, at a hearing, or at a trial,
> unless the failure was substantially justified or is harmless. In addition to or
> instead of this sanction, the court on motion and after giving an opportunity to
> be heard:

---

[10] It must be noted that Mr. Rappoport's report is more favorable to the conditions at Windber Hospital's facilities than
his deposition.  However, the question here is not whether Windber Hospital should have amended in light of Mr.
Rappoport's report or deposition but whether a reasonable inquiry was made prior to certifying a response to
Zablotney's request for admission.

> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(c)(1). The "other appropriate sanctions" identified by Rule 37(b)(2)(A)(i)-(vi) include, in relevant part:

> (i) directing that matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part; [or]
>
> (vi) rendering a default judgment against the disobedient party.

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

The Advisory Committee Notes indicate that Rule 37(c)(1) automatically "prevents a party from using as evidence any witnesses or information that, without substantial justification, has not been disclosed as required by Rules 26(a) and 26(e)(1)." 1993 Advisory Committee Notes Subdivision (c). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion[,]" *id.,* and may be augmented by any of the additional, appropriate sanctions, including those listed in Rule 37(c)(1)(A)-(C) and Rule 37(b)(2)(A)(i)-(vi). *See* Fed. R. Civ. P. 37(c)(1). Any sanctions authorized by Rule 37(c)(1) in addition to the automatic sanction—which prohibits the use of that information or witness to supply evidence on a motion, at a hearing, or at a trial

except when the failure was substantially justified or is harmless—are permissive sanctions that a court may impose in its discretion. *See Gittins v. Gateway Clipper Inc.*, No. 2:16-cv-00757, 2021 WL 1232421, at *5 (W.D. Pa. Mar. 12, 2021); *see generally Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007).

The Court need not address whether Windber Hospital violated Federal Rule of Civil Procedure 26(e)(1)-(2) by failing to supplement its response to Zablotney's Request for Admission on the issue of the sloping of accessible parking spaces following Mr. Rappoport's report or deposition such that sanctions should be imposed under Rule 37(c)(1). "Even if [p]laintiff was required to supplement pursuant to Rule 26(e), the sanctioning language in Rule 37(c) permits, but does not require, the Court to impose sanctions." *Vay v. Huston*, No. 14-769, 2016 WL 1408116, at *8 (W.D. Pa. April 11, 2016). The Court finds that any Rule 37(c)(1) sanctions in addition to the automatic sanction are unnecessary in this situation because the deterrent purpose of additional Rule 37(c)(1) sanctions will already be satisfied through the expenses, including attorney's fees, awarded to Zablotney for the entirety of the proceedings, which takes into account this allegedly violative conduct. Therefore, the Court need not address Rule 37(c)(1) sanctions beyond that which is automatically imposed.

### 3. Rule 37(c)(2) Sanctions

Federal Rule of Civil Procedure 37(c)(2) provides, in pertinent part:

(2) ***Failure to Admit.*** If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine of the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making the proof. The court must so order unless:

    (A) the request was held objectionable under Rule 36(a);

    (B) the admission sought was of no substantial importance;

(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

Rule 37(c)(2), thus, by its terms, sets forth three elements that must be met before a court is required to order reasonable expenses be paid in the event a listed exception does not apply: (1) a party fails to admit what is requested under Rule 36; (2) the requesting party later proves that the document at issue is genuine or the matter was true; and (3) the requesting party moves for reasonable expenses, including attorney's fees, incurred in making the proof. Fed. R. Civ. P. 37(c)(2). Rule 37(c)(2) does not specify the timeline for filing a motion for expenses, but the Advisory Committee Note makes clear that it "is intended to provide post trial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." 1970 Advisory Committee Notes Subsection (c). As a result, "[d]istrict courts ordinarily impose Rule 37(c)(2) sanctions when one party refuses to admit a fact and the other party is compelled to prove the truth of that fact to the jury." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 488, 491 (6th Cir. 2014). Courts in the Third Circuit have consistently held that Rule 37(c)(2) affords only post trial relief. *See e.g. Easley v. Tritt*, No. 1-17-cv-930, 2020 WL 836695 at *20 (M.D. Pa. Feb. 20, 2020) (holding that Rule 37(c)(2) does not "set forth a *pre-trial* procedure that authorizes a court to inquire into the substantive accuracy of a denial" of a Request for Admission) (emphasis added); *Stephens v. Pennsylvania Board of Probation and Parole*, No. 1-19-cv-00102, 2020 WL 13750277, at n.1 (M.D. Pa. June 24, 2020) (stating that "[t]he only sanction available for a party's failure to admit what is requested under Rule 36 is a *post-trial* award of reasonable expenses incurred in proving a document to be genuine or a matter to be true" under Rule 37(c)(2)) (emphasis added); *Rowe v. E.I. duPont de*

*Nemours and Co.*, Nos. 06–1810–RMB–AMD, 06–3080–RMB–AMD, 2008 WL 4514092, at n.6
(D. N.J. Sept. 30, 2008) (finding that only *after* the plaintiff proved a matter denied by the
defendant in response to a request for admission to be true at *trial*, could they file a motion pursuant
to Rule 37(c)(2)); *Caruso v. Coleman Co.*, No. 93-CV-6733, 1995 WL 347003, at *4 (E.D. Pa.
June 7, 1995) ("Plaintiff's only recourse is to use Rule 37(c) *after trial* to seek reimbursement for
having to prove the purported facts contained within the above requests, but only if defendant's
denials are later found to be not substantially justified.") (internal quotation marks omitted)
(emphasis added).[11] This comports with the application of Rule 37(c)(2) in the cases Zablotney
relied upon in briefing this issue. *See Leonard v. Stemtech International Inc.*, 834 F.3d 376 (3d.
Cir. 2016) (affirming the imposition of Rule 37(c)(2) sanctions after trial); *Reynolds v. University
of Pennsylvania*, 483 Fed.Appx. 726, 736 (3d Cir. 2012) (imposing Rule 37(c)(2) sanctions after
the moving party proved the requested matter true at trial).

The Court finds, that despite any brazen admission(s) at a deposition, awarding Rule
37(c)(2) sanctions before trial would be inappropriate. *See HP Tuners, LLC v. Cannata*, No. 3:18-
cv-00527-LRH-WGC, 2021 WL 3146451, at *4 (D. Nev. July 26, 2021). Because Zablotney did
not prove the truth of the matter requested at trial, it would be inappropriate for the Court to impose
sanctions under Rule 37(c)(2). Thus, the Court declines to do so.

---

[11] The majority of courts outside of the Third Circuit have likewise held that "motions under Rule 37(c)(2) must be
made after the matter is proven at trial." *N.U. by and through Unzueta v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV,
2017 WL 1250804, at *2 (D. Kan. April 5, 2017) (citing *Joseph v. Fratar*, 197 F.R.D. 20, 23 (D. Mass. 2000); *Cooper
v. State Farm Fire & Cas. Co.*, 568 So.2d 687, 696 (Miss. 1990); *A & V Fishing, Inc. v. Home Ins. Co.*, 145 F.R.D.
285, 288 (D. Mass. 1993)); *see also Superior Sales West, Inc. v. Gonzalez*, 335 F.R.D. 98, 105-06 (W.D. Tex. 2020)
(citing *Cont'l Cas. Co. v. Brummel*, 112 F.R.D. 77, 82 (D. Colo. 1986); *Montes v. Pinnacle Propane, LLC*, No. 16-cv-
0126, 2016 WL 9819527, at *2 (D.N.M. Oct. 18, 2016); *Nat'l Semiconductor Corp. v. Ramtron Int'l Corp.*, 265
F.Supp.2d 71, 74-75 (D.D.C. 2003)); *McCarthy*, 763 F.3d at 491.

## III.    Conclusion

Because Zablotney received some relief on the merits of her claim, achieved a material alteration of the legal relationship between the parties, and the material alteration was judicially sanctioned in the Court's July 12th Order, ECF No. 32, the Court found that Zablotney was a prevailing party and entitled to reasonable attorneys' fees, including litigation expenses and costs under the ADA.  Because Zablotney failed to produce sufficient evidence to establish a prima facie case that the requested attorney's fees constituted a reasonable market rate for the legal services rendered, the Court exercised its discretion to determine a reasonable hourly rate.  After assessing the reasonableness of the hours expended and making reductions for redundancy, the Court determined the lodestar amount and awarded Zablotney $120,450.10 in attorneys' fees.  The Court further found that Zablotney is entitled to reasonable costs and litigation expenses in the amount of $30,580.33.   Thus, Zablotney is entitled to a total award in the amount of $151,030.43. However, because the parties have not agreed upon an amount for monitoring costs and Zablotney has not yet undertaken any monitoring activity to enable counsel to provide the Court documentation of the costs associated, Zablotney is not entitled to an award for monitoring costs. The Court directs the Parties to meet and confer to determine a mutually agreed upon annual cost for monitoring.  If the Parties are unable to mutually agree upon terms, the Court will permit Zablotney to file a petition with the Court documenting and requesting monitoring costs at the completion of the first year's monitoring and annually thereafter for the duration of the agreed upon three-year period.  Windber Hospital will be given opportunity to respond but reply and sur reply will be upon Order of the Court.

An appropriate Order will follow.

Date: September 30, 2024

Stephanie L. Haines
United States District Judge